PETER SMITH *et al.*

*v.*

CHARLES WUNDERLICH *et al.*

1. TRESPASS QUARE CLAUSUM FREGIT. To maintain trespass to real property, the plaintiff must have the actual possession, by himself or his servant, at the time the injury is committed, except only where he is the owner, and the land is unoccupied, or there is no adverse possession.

2. MEASURE OF DAMAGES—*in trespass to realty.* The gist of this action is, the injury done to the possession, and if the trespass amounts to an ouster of the plaintiff, he can, in an action brought before re-entry, recover damages only for the trespass itself, or first entry.

3. A disseizee may maintain trespass against the disseizor for the disseizin itself, because he was then in possession, but not for an injury after the disseizin, until he gains possession by re-entry, and then he can have his action for an intermediate damage.

4. But, if the disseizee gains possession by re-entry after the disseizin and before suit, he may recover damages for the *mesne* profits as well as for the first entry.

5. Where a tenant is ousted by his landlord before the expiration of his term, and, without any re-entry, he brings an action of trespass, he can recover damages for the ouster itself, and all the necessary and natural consequences thereof, but not for the value of his unexpired term, or for the *mesne* profits thereof.

6. SAME—*exemplary damages.* In an action of trespass to real estate, if the circumstances of aggravation render it impossible to apply any fixed rule of law, the jury may give exemplary damages, to be graduated with reference to the motives which actuated the defendant, and the manner in which the act complained of was committed.

7. The pecuniary condition of the defendant may be considered, not for the purpose of showing how much he is able to pay, but that the jury may determine how much his rank and influence in society, and the extent of the injury, are increased thereby, and it is error to instruct a jury that, in fixing the amount of exemplary damages, they may take into consideration the pecuniary ability of the defendant to pay.

APPEAL from the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

The action was trespass *quare clausum fregit,* by appellees against appellants, to recover damages for a forcible *ouster* of the former by the latter from premises described as No. 24 West Madison street, Chicago.

The declaration, containing four counts, alleged possession in plaintiffs; that they carried on the business of shoemakers therein; an ouster therefrom by defendants on Dec. 11, 1871, with a *continuando,* under a *videlicit,* to the time of commencement of suit, and, as special damages, that plaintiffs derived great gains, etc., from their business, to-wit: $1000 per month; the removal of certain goods and chattels (describing them,) from the premises; spoiling the same; taking and carrying them away; the breaking up, hindering and preventing them from carrying on said business, and depriving them of the use of said premises.

The suit was brought January 27, 1872. The defendants appeared and pleaded, separately, the general issue. Trial was had at the November term, 1872, before the court and a jury.

Evidence was given tending to show that, although the *locus in quo* was favorably located for plaintiffs' business, yet it was a small wooden building, only 18 feet in width; that a partition had been placed lengthwise through the room constituting the lower story, making each of the apartments 9 feet in width; the west of these was occupied by plaintiffs, where they carried on, as co-partners, the business of shoemakers; that the room so occupied by plaintiffs, being of the width of about 9 feet, had a small, dark store-room in the rear, the front constituting a shop, which would accommodate only four workmen; that this west part of the lower floor occupied by plaintiffs was held by them under a lease from defendant Dunne, which, according to plaintiffs' testimony, was a lease until May 1, 1872, while Dunne testified that it was only from month to month. The rent was $30 per month. At the time of the alleged ouster, Dunne was occupying the east half of the lower floor, for a tailor shop, and the whole upper part as a residence for himself and family. It appeared that Dunne was the owner of the building, but had leased the ground of defendant Buck, this lease running until the 30th of April, 1874, at a ground rent of $275 per year.

It further appeared that, December 1, 1871, (and the evidence tends to show with Dunne's consent,) Buck executed a lease of this same ground to defendant Smith, running till May 1, 1874, at the rental of $75 per month; that, December 2, 1871, Dunne entered into a contract with said Smith, to sell to the latter the said building, and assign to him his (Dunne's) lease from Buck, for the consideration of $2000, of which $25 was paid down, the balance to be paid when he got possession of the building, which Dunne was to give on or before the 9th of the same month.

The plaintiffs' evidence tends to show that, early Monday morning, being the 11th of that month, an opening was made in the partition between Dunne's shop and that of the plaintiffs, no person being, at the time, in the latter, and all the goods and chattels in plaintiffs' shop were removed therefrom

into Dunne's shop; that this being done, Smith paid the balance due on the sale of the building, and Dunne executed to him an assignment of his lease from Buck, and Smith thereafter retained possession of the whole premises, except that plaintiffs made a re-entry, by force, during the day, but kept possession only for a few hours, and have made no re-entry since, nor did they attempt, by suit for forcible entry or ejectment, to regain possession.

·Evidence was given by plaintiffs tending to show that defendant Buck was worth half a million of dollars, Smith, about thirty thousand dollars, and Dunne, from ten to fifteen thousand dollars; also, against the objection of defendants, gave evidence tending to show the difference between the rental value and the rent they had to pay, as well as the profits of their business down to May 1, 1872.

Upon the plaintiffs' right of recovery, and the question of damages, the court instructed the jury as follows:

"1st. If the jury shall believe, from the evidence, that plaintiffs, Wunderlich and Siebert, had a verbal lease of the premises described in the declaration, which extended up to the first day of May, 1872, and that they were wrongfully ousted from said premises by the acts of the defendants, then the defendants are liable, and the damages should be : *first,* the difference between the real rental value of the premises, as appears from the evidence, from the time they were so ousted, and the amount which the plaintiffs were to pay as rent therefor, until May 1st, 1872; *second,* any loss sustained by them in their business, shown by the evidence as the necessary consequence of being deprived of the premises, after the time when the jury shall believe, from the evidence, said plaintiffs were ousted; but the defendants are not liable for any such loss in plaintiffs' business, as plaintiffs could, by ordinary and reasonable prudence in their business, prevent.

" 2d. If the jury shall believe, from the evidence, that the plaintiffs, Wunderlich and Siebert, leased the premises in

430      SMITH *et al. v.* WUNDERLICH *et al.*     [Sept. T.

Statement of the case.

question from Dunne by a verbal lease for one year from and after the first day of May, 1871, and that they took possession under said lease, and performed, on their part, all the conditions of said lease; and if the jury believe, from the evidence, that, on the 11th day of December, 1871, any of the defendants entered upon said premises, against the will of the plaintiffs, Wunderlich and Siebert, and ejected and kept them from the possession and use of said premises up to the first of May, 1872, then, and in that case, such of the defendants as the evidence may show so entered upon said premises, are liable for all the damages which Wunderlich and Siebert have sustained to their business, by being so ejected from and kept out of the possession of said premises, as far as the same appears from the evidence.

"3d. If the jury believe, from the evidence, that any of the defendants are guilty, and that, in committing the trespasses in question, such defendants were actuated by motives of malice and oppression, then the jury may, in addition to the damages which the jury may, from the evidence, believe Wunderlich and Siebert actually sustained by reason of such trespasses, assess such further damages as the jury shall think proper, as a wholesome punishment to such defendants, and as a public example to wrongdoers, and, in arriving at and determining the amount of such punitive or exemplary damages, the jury may take into consideration the pecuniary ability of each of such individual defendants so guilty of said trespasses, if the jury find, from the evidence, any trespass was committed, to pay such punitive or exemplary damages.

"5th. The jury are instructed, as a matter of law, if they find, from the evidence, that any of the defendants directed, aided or advised the wrongful acts laid in the declaration, and that said wrongful acts were committed as laid, then the jury must find such defendants, who so directed, aided or advised the commission of such wrongful acts, guilty, as if they had committed the trespasses with their own hands."

The jury, by their verdict, found all the defendants guilty, and assessed plaintiffs' damages at $8000. The defendants entered separate motions for a new trial, and upon the ground, among others, that the damages were excessive. Plaintiffs thereupon entered a special *remittitur* of $475, but the court, requiring that a further and general *remittitur* be entered of $3525, which was done, overruled the several motions for new trial, and gave judgment against defendants upon the verdict, for $4000, and the latter appealed to this court.

Mr. B. W. ELLIS, for the appellant Nicholas Dunne.

Mr. GEO. GARDNER, for the appellant Anson H. Buck.

Messrs. ROUNTREE & McHUGH, for the appellant Peter Smith.

Mr. T. A. MORGAN, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This was trespass *quare clausum fregit*, by appellees against appellants. The cause of action declared on, was an ouster of plaintiffs, by defendants, from a certain shop on Madison street, Chicago, wherein plaintiffs, as partners, then were, and for some time previously had been, carrying on the business of shoemakers. The ouster was set out as occurring December 11, 1871, with a *continuando* to time of commencement of suit. The suit was brought January 27, 1872. The plaintiffs, on the trial, gave evidence tending to show that they held the premises under a verbal lease from Dunne, one of the defendants, and that their term extended until May 1st, 1872; also gave evidence, against the defendants' objections, of the difference between the actual rental value of the premises, and what they were to pay as rent, down to the first day of May, 1872; also gave evidence tending to show prospective profits in their business to that time.

By the first instruction given for plaintiffs, the court directed the jury that, if they found, from the evidence, that plaintiffs had a verbal lease of the premises to the first day of May, 1872, and were wrongfully ousted therefrom by the acts of the defendants, then the latter were liable, and the damages should be: *first,* the difference between the rental value of the premises, as appears from the evidence, from the time they were so ousted, and the amount plaintiffs were to pay as rent until May 1st, 1872 ; *second,* any loss sustained by them in their business, shown, by the evidence, as the necessary consequence of being deprived of the premises, *after* the time when the jury shall believe, from the evidence, the plaintiffs were ousted.

To the giving of this instruction defendants excepted, and now assign it for error.

There is no evidence tending to show that, after the ouster was consummated, they made any lawful re-entry, or brought any action of forcible entry and detainer, to recover possession ; but, on the contrary, they brought this action to recover for the ouster, before their term expired, and, by the instruction now in question, the jury were directed, in assessing damages, to first allow plaintiffs the rental value of the premises above the rent they were paying, for the residue of the term, and then, *any loss* sustained in their business as a necessary consequence of the ouster, *after* the time it occurred. The words, *any loss,* would, of course, include the loss of profits which they would have realized, if they had not been ousted, by the use of the premises, in carrying on their business. The jury could not understand it otherwise, because the basis was laid for estimating prospective profits, by showing what had been the net profits of their business for the month next previous to the ouster, which included not only their own time and labor, but the use of the premises in producing them. It is obvious, that plaintiffs could not realize the advanced rental value over and above what they had to pay for rent, as an income independent of the profits derived from

using the premises in conducting their business, without renting or otherwise disposing of them to another party, and common experience teaches us that they could not do that, and still retain them, to be used for carrying on their business.

There may be cases where, from the peculiar circumstances of the disseizee's business, and the actual rental value of the premises, the difference between the actual rental value and what it was paying as rent, would not be full compensation for the loss in having his business broken up by the disseizin. Where such is the case, the plaintiff has been permitted to make his election, and, instead of recovering the rental value, demand compensation for the loss of profits in his business, occasioned by the ouster. The case of *Chapman et al. v. Kirby,* 49 Ill. 211, though an action on the case, and not trespass, was decided upon that principle; but it seems to us that to allow as a measure of damages both the advanced rental value, and prospective profits, which could be realized only by the use of the premises by the plaintiffs themselves, would be to establish mere arbitrary rules of damage, devoid of sense or justice either in their basis or application.

But, aside from improperly uniting the two grounds of damage, is the rule as to the rental value, under the circumstances of this case, a correct one? It is laid down by the instruction under consideration, without qualification, and is, in effect, that, where a tenant for years is ousted by strangers —we say strangers, because there is no allegation in the declaration about the tenancy, or one of the defendants being lessor—the disseizee, without a subsequent re-entry, may bring trespass for the disseizin, immediately after it is effected, and recover, as one species of damage, the value of the unexpired term. Suppose the term has five, ten or twenty years to run. Surely, there can be no such a rule as that; because, if there were, as applicable to terms for years, why not, upon the same principle, extend it to any greater estate? Suppose, again, that plaintiffs' unexpired term had five years to run, and,

without any re-entry, they had waited four years before bringing this suit, and then another year had elapsed before trial, the Statute of Limitations would not have been transcended; but could they recover *mesne* profits, or the rental value for that entire period ? If for five months, why not for five years? The answer to these queries is to be found in the established rules of the common law.

To maintain trespass to real property, the plaintiff must have the *actual* possession, by himself or his servant, at the time when the injury was committed.   The only exception to this rule is, where the plaintiff is owner, and the lands are unoccupied, or there is no adverse possession.   1 Chit. Pl. 177, and cases in notes; Sedg. on Dam. 134; *Dean* v. *Comstock,* 32 Ill. 173.   The gist of the action is, the injury to the possession.

It follows, from the above rule, that if the trespass amount to an ouster of the plaintiff, he can recover damages only for the trespass itself, or first entry; for though every subsequent wrongful act is a continuance of the trespass, yet, to enable the plaintiff to recover damages for these acts, there must be a re-entry.   1 Chit. Pl. 177; Sedgwick on Dam. 135; Addison on Torts, 304.   "A disseizee may have trespass against the disseizor, for the disseizin itself, because he was then in possession; but not for an injury after the disseizin, until he hath gained possession by re-entry, and then he may support this action for an intermediate damage."   Taylor on Landlord and T. sec. 783.   See, also, Blac. Com., book 3, p. 210.

In *Monchton* v. *Pashley,* 2 Ld. Raym. 974, s. c. 2 Salk. 638, Lord HOLT said:   "As to the case of an entry with ouster, it may be set forth specially in the count or not, with a *continuando* or *diversis diebus et vicibus,* between such a day and such a day; but then you must prove that the plaintiff re-entered before the action brought, or else you can not assign the *mesne* trespass; for, by the ouster, the defendant has got the plaintiff's possession, and he can not be a trespasser to the

plaintiff; but when the plaintiff re-enters, the possession is in him *ab initio,* and he shall have the *mesne* profits."

In *Case* v. *Shepherd,* 2 Johns. Cases, 27, the court say : "The only question, therefore, is, as to the extent of the damages to be recovered, or whether the defendant is to be made responsible for the consequential damages of the ouster.    In this case, the trespass is laid with a *continuando;* but the distinction as to the amount of damages to be recovered in this case is this:    After an ouster, you can only recover for the simple trespass, or the first entry ; for though, when there is an ouster, every subsequent act is a continuance of the trespass, yet, in order to entitle the plaintiff to recover damages for the subsequent acts, there must be a re-entry ; but, after a re-entry, he may lay his action with a *continuando,* and recover *mesne* profits, as well as damage for the ouster.    1 Ld. Raym. 692 ; 6 Salk. 639 ; 2 Ld. Raym. 974 ; 1 Leon. 302, 319 ; 13 Coke, 600 ; *Menvil's Case,* 3 Blac. Com. 210 ; Co. Litt. 257.    The present suit was commenced before any re-entry by the plaintiff.    He is, therefore, entitled to recover damages for the first entry only, or single trespass, and not for the crops."    See, also, *Holmes* v. *Seely,* 19 Wend. 507 ; *Rowland* v. *Rowland,* 8 (Ham.) Ohio R.; *Shields* v. *Henderson,* 1 Lit. (Ky.) R. 239.

In *Allen* v. *Thayer,* 17 Mass. R. 300, the court say : "Now, a disseizee can not maintain trespass for the wrong done after the disseizin, and before a re-entry ; for the freehold is in the disseizor all the time after the disseizin, excepting in cases where the estate of the disseizee shall have determined so that he could not re-enter ; as, where he was tenant for years, and his term expired, or was tenant *per auter vie,* and the *cestui qui vie* died."

In the case at bar, the plaintiffs' term had not expired, and did not expire until several months after this suit was brought. There was ample time for them to have brought an action of forcible entry and detainer, and thus have regained possession.    That done, the law, by a kind of *jus postliminii,*

or right of reprisal, would regard the possession as having been all along in them (3 Blac. Com. 210) ; and then, after the expiration of their term, bringing this suit, they would be entitled to recover, as *mesne* profits, the value of their lease or term ; for, as a general rule, the annual value of land is the measure of *mesne* profits. Adams on Ejec. 391 ; Sedg. on Dam. 124. The theory on which such recovery could be had would be, that the trespass was continued to the end of the term.

The plaintiffs not having re-entered, and their lease not expiring until many months after the ouster, they were not, upon the principle of the authorities cited, entitled to recover *mesne* profits from the ouster to the end of their term, but must be confined to the ouster itself, or the single trespass. They, of course, are entitled to recover for all the necessary and natural consequences of that act, in view of all the circumstances belonging to it, including such loss as they sustained by breaking up their business, if it was thereby broken up, and if circumstances of aggravation are shown, which render it impossible to apply any fixed rule of law, the jury have the power to give exemplary damages, to be graduated with reference to the motives which actuated the defendants, and the manner in which the act complained of was committed. *Sherman* v. *Dutch*, 16 Ill. 283.

The point is strenuously urged that there was no evidence upon which the jury would be justified in holding Buck liable for the trespass. We are of opinion that, considering his position, the motive he had, the facts and circumstances in evidence, there was sufficient to go to the jury upon the question of his participation. The plaintiffs gave evidence tending to show that the ouster was effected by others, and that Smith, the purchaser, took or came in under the disseizors. If he did not participate, or aid, or abet in, the disseizin itself, but in fact came in under the disseizor, he would not be liable in this action; for trespass does not lie against a person coming in under the disseizor. *Siford's Case*, 11 Co. R. 46.

If, however, he came in under disseizors, still, if he participated in the original act of disseizin, he would be liable, and if McCarthy participated, or aided and abetted, and in so doing he was acting under the command or direction of Smith, the latter would be liable. But if McCarthy was employed by Smith for another purpose, and of his own mere motion participated in the disseizin of plaintiffs, then such interference would not make Smith liable.

On the question of punitive damages, the plaintiffs gave evidence tending to show that defendant Buck was worth half a million of dollars, and that Dunne was worth from ten to fifteen thousand dollars; and in their third instruction the court instructed the jury that, "in arriving at, and determining the amount of such punitive or exemplary damages, the jury may take into consideration the pecuniary ability of each of such individual defendants so guilty of said trespasses, if the jury find, from the evidence, any trespass was committed, to pay such punitive or exemplary damages."

When, in trespass against several defendants, they plead not guilty, or several pleas, and the jury find for the plaintiff against all the defendants, they can not assess several damages; there can be but one assessment, and that must be against all the defendants. *Haydon's Case,* 11 Coke R. 8; *Yeazel* v. *Alexander,* 58 Ill. 254; Sedgwick on Damages, 584.

It is well understood that in actions of tort, where the element of punishment is introduced into the damages, the only reason ever assigned for permitting inquiry into the condition and pecuniary circumstances of the defendant is, that what would be a severe punishment for a poor man, by way of fine or exemplary damages, might not be felt by one that was rich. Upon this principle, alone, has evidence of, and inquiry into the pecuniary circumstances of the defendant been held competent and proper.

Now, here are three defendants, sued jointly in trespass. If found guilty, the same amount of damages must be assessed against all. One defendant is worth half a million of dol-

lars, another ten or fifteen thousand dollars. The court directs the jury that they may take into consideration the pecuniary ability of each individual defendant to pay punitive or exemplary damages, in determining the amount of such damages. This is subversive of the very reason upon which the inquiry into the pecuniary circumstances of the defendant can alone be justified. It subjects the defendant worth ten thousand dollars, and it would be the same in principle if he was worth not a dollar, to a measure of pun, ishment which would be felt by one worth half a million, and the verdict of $8000, returned by the jury, shows that they administered the punishment so as to be felt by the wealthiest of the three defendants. In *Railroad Company* v. *Smith*, 57 Ill. 517, an instruction, the same in effect as that under consideration, was held erroneous.

The true rule is stated by Greenleaf: " The jury are to inquire, not what the defendant can pay, but what the plaintiff ought to receive. But so far as the defendant's rank and influence in society, and, therefore, the extent of the injury, are increased by his wealth, evidence of that fact is pertinent to the issue." 2 Greenleaf Ev. sec. 269.

The instruction in question made the ability to pay, the criterion. In *Holmes* v. *Holmes*, 64 Ill. 294, such an instruction was held erroneous.

The judgment of the court below will be reversed and the cause remanded.

*Judgment reversed.*