## Joseph Lister, Sr., and Joseph Lister, Jr., v. Raymond McKee.

1. INSTRUCTIONS—*When to be Accurate.*—Where the evidence is conflicting the instructions should be accurate.

2. ASSAULT AND BATTERY—*Liability of Bystanders.*—Mere presence at the commission of a trespass, or other wrongful act, does not render a person liable as a participator therein.

3. SAME—*Approvers Without Encouragement.*—The mere presence of a person when an assault and battery is committed by another, even though he mentally approves the same, but without encouragement of it by word or sign, is not sufficient to charge him as a participator in the assault.

4. VERDICTS—*Excessive Damages.*—Where the amount of a verdict is, under the circumstances, of the case largely in excess of the actual damages sustained, it should be set aside.

5. EVIDENCE—*Of a Defendant's Financial Condition.*—In a proper case of tort, proof of a defendant's financial condition and his position in society is admissible for the purpose of characterizing and showing the extent of the injury, and as bearing on the question of damages.

Trespass, for assault and battery. Trial in the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the March term, 1898. Reversed and remanded. Opinion filed December 12, 1898.

E. R. Bliss and Geo. Gillette, attorneys for appellants.

Archibald Cattell and D. F. Matchett, attorneys for appellee.

Mr. Justice Adams delivered the opinion of the court.

Appellee sued appellants in trespass for assault and battery. The jury found appellants guilty and assessed appellee's damages at $10,000. Appellants moved for a new trial, whereupon appellee remitted $7,500 from the verdict, and the court overruled the motion for a new trial and rendered judgment for $2,500.

It is not claimed by appellee that the elder Lister struck him, and the evidence shows that he did not, but appellee claims and testified that he was present when his son, Joseph Lister, Jr., assaulted and beat appellee, and that the elder Lister encouraged such assault and battery. In this appellee is not corroborated by any other witness. On the contrary, Joseph the elder denies it, and his testimony and that of his son and Mike Smith, is to the effect that he, Joseph, Sr., interfered between appellee and Joseph, Jr., to separate them and put a stop to the occurrence. In this state of the evidence it can hardly be said that it preponderates as against the elder Lister. Peaslee v. Glass, 61 Ill. 94; Belden v. Innis, 84 Ib. 78; I. C. R. R. Co. v. Alexander, 46 Ill. App. 505.

Appellee testified that Joseph Lister, Jr., beat him. His testimony as to his injuries is, in substance, as follows:

"When I left the factory, my face was all swollen up before I got home; I could not see out of my left eye, and my right eye was closed; I found a cut on my neck and some blood there in my hair; after I left the factory I went home and laid down on the lounge, and my wife went after Dr. Booth; she put some raw beef on me, and washed my face and helped fix myself up. I had severe pain all the time; felt it in the side of my head; over the right eye, and all through my jaw and in the back of my neck. I saw Dr. Booth the next day; went to bed that afternoon and was confined, practically, to the house only a couple of weeks or such a matter. I don't know; I couldn't say how

long; I was not in bed; I was able to get around. Dr. Booth treated me at that time; was in his care until August the same year. The first time he treated me he applied applications to my face; he bandaged my head in a solution of some kind, to take down the swelling and to take the color out of my face; he treated me that way until the color came back to my face, and then I had that numb feeling; I couldn't bite on anything hard; the numb feeling was in my jaw; had to use light food. The doctor gave me an electric battery to apply to my face."

He says further that his head has hurt him ever since he was injured. Dr. Booth, a witness for appellee, testified that he visited him February 4, 1895, being the next day after he claims to have been injured, and found his left eye almost completely closed, the right eye very much swollen, the right cheek bone appearing as if it had received a severe stroke, the blood settled or congested on his face, a contusion on the back of his head about half the size of a small egg, and that he was suffering great pain; also, that he could only move his jaw a very little. On cross-examination this witness testified that there was partial facial paralysis.

Dr. Bennett, witness for appellee, testified that, about May 1, 1895, he examined appellee; that he had facial paralysis on the right side of his face, and that the only effect of that would be that "it might interfere to a slight extent with his eating, with his facial movements, but that is all. It would not interfere with his general health."

There was no attempt made by appellee's attorneys to prove that his alleged injuries are permanent, nor is this claimed.

James Youngs testified that, during the spring and summer of 1895, after the time of the alleged assault, appellee was at his home four or five times, and that he appeared as well as he had ever seen him.

Appellee testified to having received a severe beating by Joseph Lister, Jr., but here, also, the evidence is conflicting; the evidence for the appellants being that the younger Lister shoved him, when he fell down, and that he struck him only once. In this state of the evidence the instruc-

tions should have been accurate. C. C. Ry. Co. v. Canevin, 72 Ill. App. 81, and cases cited.

Appellee's second and fourth instructions are as follows :

2. " The jury are instructed that if two or more persons commit an unlawful assault and battery upon the person of another, then each person who participates in such assault and battery is guilty, and is liable for all the damages which the party injured may sustain in consequence of such assault and battery; that when two or more persons unite in an act which constitutes a wrong to another, intending at the same time to commit the act and do it under circumstances which fairly show that they intended or authorized the consequences which followed, then the law compels each to bear the responsibility of all. And if the jury believe from the evidence in this case that Joseph Lister, Jr., committed an assault and battery on the plaintiff, as alleged in the declaration, and that said assault and battery was committed in the presence of Joseph Lister, Sr.; and if, further, from all the circumstances disclosed in the evidence, you find that both Joseph Lister, Jr., and Joseph Lister, Sr., intended the consequences which followed, then each is liable as principal and to the same extent as though each had actually participated in committing the assault and inflicting the injury."

4. " The jury are instructed by the court that if, under the evidence, you find the defendants, or either of them, guilty of the assault and battery, as charged in the plaintiff's declaration, and that such assault and battery was unprovoked by the plaintiff and was maliciously, willfully and wantonly committed on the plaintiff, and that the plaintiff suffered actual damage thereby, then the jury, in fixing the amount of the plaintiff's damages, are not confined to the actual damage proved, but they may give in addition thereto such exemplary or punitive damages, or ' smart money,' as in their judgment will be just and proper as a punishment to the defendants, or either of them, in view of all the facts and circumstances proved on the trial; and in determining the assessment of such exemplary or punitive damages they may take into consideration the circumstances of the defendants, or either of them, as to wealth and property, so far as these appear from the evidence; that they may take into consideration also the position of the plaintiff in society, his age and pecuniary circumstances, so far as they appear in the evidence; and they may give a verdict for such a sum as from the evidence

they think the plaintiff ought to receive, and the defendants, or either of them, ought to pay, under all the circumstances of the case."

The first sentence of the second instruction announces a correct rule of law, but the second sentence is erroneous, in that it instructs the jury that they may find Joseph Lister, Sr., guilty on mere proof of intention, and the instruction is well calculated to mislead the jury into supposing that such intention may be inferred from the mere fact that he was present when the assault was committed by his son.

" Mere presence at the commission of a trespass, or other wrongful act, does not render a person liable as a participator therein." Hilmes v. Stroebel et al., 59 Wis. 74; Rhinehart v. Whitehead et al., 64 Ib. 42; Brown v. Perkins et al., 1 Allen, 89.

In the last case an instruction similar to that under consideration was held improper. Ib. 97–98.

The mere presence of a person, when an assault is committed by another, even though he mentally approves the assault, without encouragement of it by word or sign, is not sufficient to charge him as a participator in the assault. Blue v. Christ, 4 Ill. App. 351; Cooley on Torts, Sec. 127, and cases cited in note 2.

By the fourth instruction the jury were instructed that, in determining the assessment of exemplary or punitive damages, they might take into consideration the circumstances of the defendants, or either of them, as to wealth and property, so far as these appeared from the evidence. The alleged assault was committed at a glue factory where appellee was employed, and it was proved by appellee that Joseph Lister, Sr., was the proprietor of the factory. There was no evidence that Joseph Lister, Jr., owns anything.

In T., W. & W. Ry. Co. et al. v. Smith, 57 Ill. 517, the railroad company and the conductor were sued in trespass for the expulsion of the plaintiff from the train by the conductor. There was no proof that the conductor owned any property. The jury were instructed that, in assessing damages, they might consider the ability of the company

to pay.   Held, that the instruction was erroneous; that the assumed wealth of the company could not be made a basis of punitive damages against the conductor, who might not have been worth a dollar.   The court say :  "That some such consideration must have entered into the question of damages, is quite apparent from the amount of the verdict, which seems, under the circumstances of the case disclosed by the  evidence, to  have  been  largely in excess of any actual damages sustained by appellee."

We think this language appropriate in the present case. See also Smith et al. v. Wunderlich et al., 70 Ill. 426, 437–8.

In the last case, and also in Holmes v. Holmes, 64 Ill. 294, it is held that an instruction making the damages to depend, to any extent, upon the ability of the defendant to pay, is erroneous, citing 2 Greenleaf on Evidence, Sec. 269. In a proper case, proof of a defendant's financial condition and his position in society is admissible, but merely for the purpose of characterizing and showing the extent of the injury, and as bearing on the question of what the plaintiff should receive.   2 Greenleaf on Evidence, 269.

It is obvious that while a defendant might be able to pay a million dollars, the plaintiff might not be entitled to receive a thousand.

The judgment will be reversed and the cause remanded.