BOCKMAN *v.* WORLD INSURANCE COMPANY.

5-250                                                  268 S. W. 2d 1

Opinion delivered May 17, 1954

*Cracraft & Cracraft,* for appellant.

*Gannaway & Gannaway, Peter A. Deisch* and *Burke, Moore & Burke,* for appellee.

J. SEABORN HOLT, J.    These consolidated cases were before us on a former appeal (*Bockman* v. *World Ins. Co. and Mutual Benefit Health & Accident Ins. Co.,* 222 Ark. 877, 263 S. W. 2d 486, opinion delivered January 11, 1954), wherein two issues were presented: (1) Whether the evidence was sufficient to support the jury's verdict in favor of appellees (Insurance Companies), and (2) Alleged error of the trial court in failing to make a definite and proper ruling on Dr. Bockman's motion for a new trial.    On that appeal, we sustained appellant's latter contention and did not decide the first.    We remanded the case ''to permit the court to rule on the motion (for a new trial), in accordance with this opinion, which on certification will become a part of the record here.''

The trial court, promptly and properly, complied with our directive. The motion for a new trial was overruled and the present appeal presents the one remaining question of the sufficiency of the evidence to support the jury's verdict in favor of appellees (Insurance Companies).

There is no contention that any improper instructions were given to the jury.

Under the terms of the two insurance policies (similar in effect) issued to Dr. Bockman, it was provided that if appellant should, by accidental means, be wholly and continuously disabled for one day or more, as long as he lives, and suffers total loss of time, the respective appellees would each pay a monthly indemnity at the rate of $100.00 per month for the first fifteen days, and at the rate of $200.00 per month thereafter.

Appellant says "that he sustained X-ray burns from the use of a fluoroscope during the month of April, 1951, which caused him to suffer from radio dermatitis of the second, third, fourth and fifth fingers of both hands, resulting in a continuous and permanent disability from the date of the alleged accident, and that due to his injuries the appellant has been and will continue to be hereafter disabled from performing the substantial duties of his profession in the usual and customary way."

Appellees say "that the evidence clearly discloses that the appellant was not and is not permanently disabled to such an extent as would prevent him from performing all the substantial duties as a medical practitioner in the usual and customary manner."

So, the sole question is: Was there any substantial evidence to support the jury's verdict? We hold that there was.

In determining this issue, this Court, on appeal here, has long been committed to the following rules of law, so well established that citation of authorities is unnecessary: We are required to view the evidence in the light most favorable to the jury's verdict, and affirm if there

be any substantial evidence to support it. The weight of the evidence and credibility of witnesses are solely within the jury's province. We are not concerned with where the preponderance of the evidence may be. This prerogative rests with the jury and the trial court.

The testimony shows that during the time Dr. Bockman claimed to be disabled, within the meaning of the policies, from May 1, 1951 through April, 1953 (the case was tried April 30, 1953), he treated a total of 13,576 patients and collected for services $43,485.09, or an average of approximately $1,812.00 monthly. He was a general practitioner, and did no surgery. He testified: "Would you explain to the jury what the nature and the duties of a general practitioner are? A. Everything but surgery, home deliveries and do general practice and complete physicals. Q. Most of it is diagnosis? A. Yes, sir. Q. And prescribing medicine? A. Yes, sir. Q. Is there anything to prevent you from doing that? A. No, sir, I can still do that, I can still do a blood pressure. Q. How many hours a day do you put in? A. Plenty of them. Q. From six o'clock in the morning? A. Yes, sir, and sometimes all night, Mr. Burke, I am a practicing physician and a country doctor. Q. Everything that is done there is done under your supervision? A. Yes, sir. Q. Then you are still practicing medicine? A. Yes, sir, I never denied that. Q. You devote practically all your time to your practice? A. That is all I have done for the last 17 years. Q. That is all you have done? A. Yes, sir, especially since May 1st or 2nd of 1951, and I am still devoting it. Q. Doctor, do you have a very large practice? A. Yes, sir, I have more than I can look after."

Two prominent and qualified practicing physicians in Helena testified on behalf of the insurance companies. Dr. Storm, in effect, testified that he examined Dr. Bockman in October, 1952, and found dermatitis on four fingers of each hand, that the thumb was not involved, and no malignancy. "Q. What was your opinion, after that examination in October, 1952, as to whether Dr. Bockman was able or unable to perform all, or substantially all, of the acts of his profession? A. I think he was, yes,

sir.'' That he examined Dr. Bockman yesterday with Dr. McCarty and found no change in his condition since October, 1952; no ulceration or malignancy. ''Q. What is your opinion as to whether he can perform all, or substantially all, of the acts of his profession? A. I see no reason why he couldn't.'' Dr. McCarty, in effect, corroborated Dr. Storm's testimony.

Without detailing more of the evidence, we think it ample to support the verdict and affirm the judgment.