DUNAWAY v. TROUTT.

5-2153                                  339 S. W. 2d 613

Opinion delivered October 24, 1960.

[Rehearing denied November 28, 1960.]

*Rose, Meek, House, Barron & Nash,* for appellant Gazette Publishing Co.; *Alston Jennings,* for appellants Dunaway and Hill.

*Howell, Price & Worsham,* for appellee.

SAM ROBINSON, Associate Justice. This is a libel action wherein appellee, Bob Troutt, was awarded a judgment in the sum of $100,000 against appellants, Harold F. Dunaway, Cecil B. Hill and Gazette Publishing Company. The publishing company publishes the Arkansas Gazette, a daily newspaper having statewide circulation. Dunaway and Hill are engaged in the business of the distribution and operation of music and pinball

machines. Troutt is a newspaper reporter employed by the Arkansas Democrat, a daily newspaper published in Little Rock and circulated throughout the State.

On March 9, 1959, Troutt filed the complaint in this action in the Pulaski Circuit Court, alleging that on the 26th day of February, 1959, the defendants falsely and maliciously accused him of extortion, blackmail and accepting a "pay-off"; that the defendants "did unlawfully, wrongfully, and maliciously fabricate, invent and cause to be prepared certain tape recordings of purported telephone conversations and interviews" with him and caused such tape recordings to be materially altered and spliced and changed so as to distort and falsify the purported conversations. The complaint further alleges that Dunaway and Hill entered into a scheme and conspiracy with the Gazette to use the alleged "spurious and falsified tape recordings for the purpose of publicly discrediting the plaintiff, Bob Troutt, with his newspaper and destroying his reputation as a competitive newspaper reporter by depicting and portraying him as an extortionist and blackmailer, thereby exposing him to the public hatred, ridicule and contempt." And the complaint further alleges "that on or about the 27th day of February, 1959, the defendant Gazette Publishing Company falsely and wilfully and maliciously published in the Arkansas Gazette the said defamatory articles."

The defendants answered and admitted the publication of the alleged conversations between Troutt and Dunaway and Hill and alleged as a defense that such conversations as shown by the tape recordings did take place. The newspaper account of the alleged conversations is libelous per se, and since defendants admitted the publication of the defamatory matter, the burden was on them to prove that such alleged conversations between Troutt and Dunaway and Hill did occur. *Stallings* v. *Whittaker,* 55 Ark. 494, 18 S. W. 829; 33 Am. Jur. 256.

In support of Dunaway's and Hill's testimony that the conversations with Troutt took place as alleged, it was shown that on February 26, 1958, Dunaway and Hill

bought a tape recording machine and installed it in their place of business at 11th and Main in Little Rock. The machine is such as will record on a tape telephone conversations without the knowledge of those using the telephone. It does not appear that at the time of purchasing the tape recorder on February 26th Hill and Dunaway knew Troutt, but on March 4th Dunaway called Troutt and told him that someone had been making pictures of Dunaway's and Hill's place of business and wanted to know if Troutt knew anything about it. Both Dunaway and Hill testified that subsequently they had telephone conversations with Troutt which resulted in Hill's paying to Troutt the sum of $2,000 for the purpose of preventing him from publishing in the Arkansas Democrat false articles that would be detrimental to Dunaway's and Hill's business. By its verdicts the jury necessarily found that Dunaway and Hill did not pay Troutt $2,000 as they claimed they did, and that the purported conversations as recorded on the tapes produced by Dunaway and Hill in corroboration of their testimony did not occur. The tapes were introduced in evidence, appellants contending that they are what they purport to be, a true record of the conversations between the parties; that they are the original tapes and have not been spliced or altered in any respect. On the other hand, Troutt maintains that Dunaway and Hill paid him no money whatever; that the proposition of Dunaway and Hill paying money to him was never discussed; that the only conversation he had with them about money was when they called him in February, 1959, and indicated that the pinball operators' organization wanted to donate $2,000 to the March of Dimes and that pursuant to such conversation that organization did donate $2,050 to the proper officials of the March of Dimes. Troutt contends that Dunaway and Hill changed, altered and spliced the recorded tapes to make it appear that they made a deal with him whereby he was paid $2,000 for an improper purpose, as heretofore mentioned.

In support of his contention that the tapes were altered, Troutt produced as a witness Mr. Robert Oakes

Jordan, a qualified expert in the field of recording devices. He testified that it is easy to alter tapes like the ones introduced in evidence and that in his opinion those particular tapes had been altered and spliced. Mr. Jordan testified that there are 50 or 60 spots in the tapes that indicate they have been altered in one way or another and that about 15 of such places give him absolute assurance that the tapes are altered. Mr. Jordan used the tapes to point out to the jury those things upon which he based his opinion that they have been altered. Troutt's testimony, coupled with that of Jordan, is substantial evidence to support a verdict in favor of the plaintiff. Moreover, Mr. William S. Bachman, an expert called as a witness by appellants, testified that in his opinion the tapes had not been altered, although he said they showed evidence of having been spliced. Defendants produced weighty evidence to support their version of what transpired but of course here we do not consider the weight of the evidence. On that point the only question considered is whether there is substantial evidence to support the verdict. *Providence Washington Ins. Co.* v. *Eagle Milling Co., Inc.*, 214 Ark. 918, 219 S. W. 2d 233; *Bockman* v. *World Ins. Co.*, 223 Ark. 665, 268 S. W. 2d 1.

Hill testified that he paid $2,000 to Troutt in the presence of Judge Robert Laster of the Little Rock Municipal Court. Prior to the trial of the case, appellants gave due notice that the discovery deposition of Judge Laster would be taken. Before the date set for the taking of such deposition, appellants petitioned the trial court for an order authorizing the issuance of a subpoena duces tecum requiring the production of records of Judge Laster's bank transactions along about the time Dunaway and Hill claimed they paid $2,000 to Troutt. This was on the theory that Troutt may have given some of the money to Judge Laster. The petition was denied. Ark. Stat. § 28-256 provides that upon the motion of any party showing good cause the court may order the production of documents, etc. The trial court has a wide discretion in determining whether good cause is shown

for the production of documents. *Vale* v. *Huff*, 228 Ark. 272, 306 S. W. 2d 861. We cannot say the trial court abused its discretion where the appellants were asking for an investigation of the financial affairs of one who was not a party to the case and was never called as a witness in the case.

The complaint alleges that the defendants schemed and conspired together to use spurious and falsified tape recordings for the purpose of publicly discrediting the plaintiff. The Gazette requested the following instruction which was refused by the court: "You are instruct that there is no evidence that the defendant Gazette Publishing Company schemed or conspired with the co-defendants Hill and Dunaway to discredit the plaintiff or impeach his reputation, and you will therefore find for the defendant Gazette Publishing Company on that issue." In view of the evidence the court did not err in refusing this instruction. Mr. Hugh Patterson, called as witness by appellee, testified that he is the publisher of the Arkansas Gazette; that he was out at Mr. Dunaway's house the day before the press conference at which the transcript of the tape recordings was released to the press; and at that time, the day before the press conference, he heard the tapes played. No written transcript of the recordings had then been made, but later, and before the press conference, the attorney for Dunaway and Hill furnished to Mr. Patterson a written transcript of the recordings. Patterson drove by and picked up the transcript but did not stay. A reasonable inference deducible from the testimony is that the day before the transcript was released to the press, Dunaway and Hill, their attorney and Patterson agreed that such a release would be made. The court therefore did not err in refusing to give the above mentioned requested instruction.

The court gave appellee's requested instruction No. 1, as follows: "You are instructed that the article published by the defendant, Gazette Publishing Company, on February 27, 1959, and set out in the complaint and exhibits thereto, is actionable of itself and that it is not

privileged, and the plaintiff is entitled to recover against the defendant, Gazette Publishing Company, such compensatory damages as will fully and adequately compensate him by reason of the publication of the defamatory article by the defendant, Gazette Publishing Company, not in excess of the amount sued for, unless you find the matters concerning the plaintiff contained in the article to be true or substantially true." This instruction was copied from an instruction approved by this Court in *The State Press Co., Inc.* v. *Willett*, 219 Ark. 850, 245 S. W. 2d 403. In the case at bar, by instructions No. 3 and No. 11 the court properly informed the jury as to the law on measure of damages.

Appellants complaint of appellee's instruction No. 2 given by the trial court, as follows: "You are instructed that in an action for libel where the words or article published are libelous of themselves, the law implies some damage from the publication of the libelous matter, if any, and the law further implies that the person, or persons, if any, publishing such libelous matter intended the injury the libelous matter is calculated to effect, and in this case you have been told that the article and tapes complained of herein are libelous of themselves unless true or substantially true and that the burden rests upon the defendants to prove the truth of the contents of said publications."

In contending that the instruction is erroneous, appellants first say that the law does not imply some damages from the publication of libelous matter, but appellants concede that "where the slanderous words are actionable per se, the plaintiff is entitled as a matter of law to compensatory damages and is not required to introduce evidence of actual damages in order to recover substantial damages." It is hard to understand how under the law as just quoted and conceded by appellants to be correct, a plaintiff who makes out a case of libel to the satisfaction of the jury is not entitled to some damages as a matter of law. In fact, appellants say "In an ordinary case a plaintiff has to prove that actual damages were sustained. Libel is made the exception be-

cause of the difficulty in proving actual damages." In *Taylor* v. *Gumpert*, 96 Ark. 354, 131 S. W. 968, the Court said: "Where the slanderous words are actionable *per se*, the plaintiff is entitled as a matter of law to compensatory damages, and is not required to introduce evidence of actual damages to entitle him to recover substantial damages. In such a case the plaintiff need not prove actual damages in order to recover substantial damages. [Citing *Murray* v. *Galbraith*, 95 Ark. 199.]"

Next, appellants contend that although the publication was libelous per se, it was error to tell the jury that the defendants intended the injury the libelous matter is calculated to effect. The great weight of authority is to the effect that if the publication is libelous per se, the publisher is presumed to intend the natural consequences of his own act. Restatement, Torts, Vol. 3, § 580; 33 Am. Jur. 114; 53 C. J. S. 124.

Appellants further argue that the instruction is a comment on the weight of the evidence. We do not find that the instruction is defective in that respect, and, moreover, no specific objection was made in that regard. Dunaway and Hill complain of the instruction because, they say, it treats the tapes, transcript and newspaper article as one publication. For all practical purposes, it was one publication. Dunaway and Hill made the tape recordings, made a written transcript thereof, and furnished such transcript to the publishing company, which published it in the Arkansas Gazette.

Appellee's instruction No. 12 given by the court submitted to the jury the issue of punitive damages. The Gazette objected specifically on the ground that there had been no showing of the financial condition of the Gazette. There had been some evidence introduced as to the worth of the other defendants, Dunaway and Hill. This phase of the case has caused us considerable concern. The jury returned two verdicts, one in the sum of $50,000 for compensatory damages, and one in the sum of $50,000 as punitive damages. The point is whether that part of

the judgment based on punitive damages can be allowed to stand. At the trial evidence was introduced shedding some light on the financial worth of Hill and Dunaway, but there is no direct evidence in the record as to the financial condition of the Gazette. True, the record shows the Gazette is the oldest newspaper west of the Mississippi River and that it has a statewide circulation with some circulation throughout the United States, but such meager evidence is not sufficient to show just how severe the punishment would be by causing it to pay all or a pro rata part of a $50,000 judgment for punitive damages. While the payment of $50,000 or a pro rata part thereof may be practically no punishment at all for a very wealthy person or corporation, it may be the most severe punishment and ruinous to other. Where there are joint defendants and a judgment is against them jointly, as in the case at bar, all or any one of such defendants is liable to the plaintiff for the entire judgment. *Southwestern Gas & Electric Co.* v. *Godfrey,* 178 Ark. 103, 10 S. W. 2d 894. The individual liability of joint tort-feasors to the injured party is unaffected by the Contribution Among Tort-feasors Act, Ark. Stat. §§ 34-1001—34-1009. Section 34-1003 provides: ''Nothing in this act . . . shall be construed to effect the several joint tort-feasors' common law liability to have judgment recovered and payment made from them individually by the injured person for the whole injury; . . .'' Under our contribution Among Joint Tort-feasors statutes, one defendant may proceed against others liable to the injured party for his pro rata share, but this does not affect the right of the injured party to recover from the joint tort-feasors individually or collectively.

This kind of action, involving punitive damages, has given rise to two lines of decisions. First, the majority holds that since the judgment for punitive damages against joint tort-feasors may actually result in greater punishment for one or more of those jointly liable, than to another who is equally liable, the right to recover such punitive damages is waived when two or more par-

ties are made defendants in a case where punitive damages may be assessable.

There is an annotation on the subject in 63 A. L. R. 1405. In support of the majority rule cases are cited from the United States Supreme Court and from the states of Illinois, Missouri, Texas, Vermont, Virginia, Washington and Wisconsin. On the other hand, in support of the minority rule cases are cited from the states of Mississippi, Ohio and Pennsylvania. Perhaps the leading case in support of the majority is that of *Washington Gas-Light Co.* v. *Lansden,* 172 U. S. 534, 19 S. Ct. 296, 43 L. Ed. 543. There the Supreme Court of the United States said: ''Punitive damages are damages beyond and above the amount which the plaintiff has really suffered, and they are awarded upon the theory that they are a punishment to the defendant, and not a mere matter of compensation for injuries sustained by plaintiff. While all defendants joined are liable for compensatory damages, there is no justice in allowing the recovery of punitive damages, in an action against several defendants, based upon evidence of the wealth and ability to pay such damages on the part of one of the defendants only. As the verdict must be for one sum against all defendants who are guilty, it seems to be plain that, when a plaintiff voluntarily joins several parties as defendants, he must be held to thereby waive any right to recover punitive damages against all, founded upon evidence of the ability of one of the several defendants to pay them.'' And in *Leavell* v. *Leavell,* 114 Mo. App. 24, 89 S. W. 55, the Missouri court quoted with approval the above language of the United States Supreme Court. See, also, *Chicago City R. Co.* v. *Henry,* 62 Ill. 142; *Schafer* v. *Ostmann,* 148 Mo. App. 644, 129 S. W. 63; *Smith* v. *Wunderlich,* 70 Ill. 426; *Lister* v. *McKee,* 79 Ill. App. 210; *Singer Mfg. Co.* v. *Bryant,* 105 Va. 403, 54 S. E. 320. And in *McAllister* v. *Kimberly-Clark Co.,* 169 Wis. 473, 173 N. W. 216, the court said: ''Plaintiff here, however, having an option to sue one or more of the joint tort feasors concerned in this transaction has elected to sue more than one. Having so elected, whatever judgment is to be en-

tered in such action must be entered as against all such defendants found liable. Such defendants necessarily stand on the same footing so far as compensatory damages are concerned; but when, for the purpose of enhancing what may be given by the jury for punitory damages, evidence is offered as to the financial ability of the one, it cannot but affect the amount of punitory damages to be recovered against the others, for these also must be assessed against all or none. There is no provision of the statute by which the amount of punitory damages may be assessed separately against the several defendants and we have no inclination, even if we had the power so to do, to establish by decision any such innovation in favor of this element of damage. Where, as here, the financial ability of the several defendants is different, as manifestly it would be in the vast majority of cases, a number of authorities have held the admission of such evidence as against the one to be prejudicial error against the other, and we adopt that view.''

In support of the minority view it is argued that a wealthy person may join with him one of meager means and thereby avoid the risk of having a judgment for punitive damages rendered against him. In the Mississippi case of *Bell* v. *Morrison,* 27 Miss. 68, the court said: ''The action was for the joint tort of the defendants, who joined in their pleas. In such a case, it is held to be proper for the jury to assess damages against all the defendants jointly, according to the amount which, in their judgment, the most culpable of them ought to pay . . . Whatever, therefore, would be competent evidence with that view as to one, would be competent as to all of the defendants. Otherwise a wealthy defendant, who is principally implicated in a wrong of this character, might escape the payment of just and reasonable damages, by having others, without character or property, associated in the unlawful act.''

Up to this time this Court has not had occasion to rule on the question, and there is no statute covering the situation. After reviewing all of the authority on the subject, we are of the opinion that the better rule is that

the plaintiff waives the right to punitive damages when more than one party is made defendant in a case where ordinarily punitive damages would be assessable. Compensatory damages are awarded for the purpose of making the injured party whole, as nearly as possible. To accomplish this result, Troutt was given a judgment for $50,000, based on the verdict for that amount as compensatory damages. The $50,000 verdict based on punitive damages was not to compensate him for any damages he had sustained, but was to punish the defendants for the wrong the jury found they had committed. When a plaintiff is awarded a judgment based on punitive damages, it is somewhat of a windfall for him, because punitive damages cannot be assessed unless compensatory damages are awarded. *Kroger Gro. & Baking Co.* v. *Reeves,* 210 Ark. 128, 194 S. W. 2d 876.

By adopting the majority view, it is possible that one wrongfully publishing a libel may go unpunished by not having a judgment for punitive damages rendered against him. But on the other hand, if the minority view were adopted, a joint tort-feasor may be unjustly punished. The principle is firmly established and recognized in all courts and in every civilized country that it is better that several guilty persons go unpunished than that one innocent person be punished. Having reached this conclusion, it follows that the judgment based on punitive damages must be reversed and dismissed. This leaves intact the judgment to the extent of $50,000 for compensatory damages.

Appellants have argued other points, all of which we have examined carefully, but we find no other error.

It follows that the judgment will be reduced to the sum of $50,000, and judgment be rendered here in favor of appellee against appellants for that amount. Since the judgment is reduced by a substantial amount, the costs of the appeal will be awarded to the appellants. *Hodges* v. *Smith,* 175 Ark. 101, 298 S. W. 1023.

WARD, J., concurs.

McFADDIN and GEORGE ROSE SMITH, JJ., not participating.

PAUL WARD, Associate Justice, concurring. What I have to say hereafter is confined strictly to the question of punitive damages.

I agree with the result reached by the majority for the reasons that the judgment in this case was rendered against all three of the defendants, for the reason that a separate judgment against each individual defendant was not requested, for the reason that the Gazette's ability to pay was not shown, and for the reason that this court had no way of equitably dividing the judgment. Under these circumstances the court could do nothing except remit the judgment entirely. The majority, however, did not reach its decision on the above stated ground, and that is the reason for this concurrence.

The majority opinion contains the following statement based on what it calls the majority rule: "The right to recover (such) punitive damages is waived when two or more parties are made defendants in a case where punitive damages may be assessable."

I do not agree with the so-called majority rule, and I do not think it was necessary to rely on such a rule in this case. Since it was not necessary, I feel that the court should have waited until the specific question is raised and carefully briefed in this court.

I see no logical or practical reason why separate judgments cannot, in the same case, be rendered against separate defendants. It must be conceded that the plaintiff can recover punitive damages against one person and then in a separate suit likewise recover against another person. In either event the court and the jury acted on precisely the same law and the same evidence. Not only would my view avoid a multiplicity of suits, but any other procedure might run afoul of Ark. Stats. § 27-814, which require a joinder of parties.

The view which I have above set forth has been approved in the case of *Charles E. Faroux, et al.* v. *H. H. Cornwell, et al.*, 40 Tex. Civ. App. 529, 90 S. W. 537;

*Walker, et al.* v. *Kellar,* Tex. Civ. App., 226 S. W. 796; and *St. Louis Southwestern Railway Company of Texas* v. *W. Z. Thompson,* 102 Tex. 89, 113 S. W. 144.

In the latter mentioned case the court had this to say:

"If the defendants or either of them were actuated by malice in making the charges against Thompson or in procuring the same to be made and in prosecuting the same before the order, thereby procuring his expulsion, then the plaintiff may in the discretion of the jury recover exemplary damages against either or all of the said defendants, in such sum as the jury may believe should be assessed against the said defendants or either of them. It is not necessary, as in case of actual damages recovered, that all of the defendants should be subjected to the same verdict, because some of the defendants may have acted without malice, but in combination with others, and as to such defendants there would be no right to recover exemplary damages."