VOLENTINE *v*. WYATT.

Opinion delivered May 5, 1924.

1. MASTER AND SERVANT—OWNER OF AUTOMOBILE—NEGLIGENCE OF SON.—Where plaintiff sustained injuries through collision with defendant's automobile, operated by his son, it was error to instruct that defendant was liable for the negligence of his son, regardless of whether the son was agent or servant of defendant or engaged about defendant's business.

2. MASTER AND SERVANT—AGENCY OF SON AS JURY QUESTION.—
   Whether or not defendant's son at the time of the injury to
   plaintiff was operating defendant's car as his agent or servant
   held, under the evidence, for the jury.

3. TRIAL—ARGUMENTATIVE INSTRUCTIONS.—It was not error to refuse
   instructions which were argumentative in form.

4. TRIAL—INSTRUCTION ASSUMING DISPUTED FACT.—It was error to
   give instructions which assumed a disputed fact.

5. DAMAGES—DISFIGUREMENT OF BODY.—In an action for personal
   injuries it was not error to allow the jury to consider as elements
   of damages the disfigurement of plaintiff's body where there was
   evidence that she did not have the use of her right arm and
   that she might lose the use of that arm.

6. EVIDENCE—STATEMENT OF DEFENDANT'S SON.—Evidence of state-
   ments made in the presence of defendant's son, without denial
   by him, that at the time he collided with the automobile in which
   plaintiff was riding he stated that he intended to hit the auto-
   mobile in the back, was incompetent as substantive evidence of
   negligence on his part.

Appeal from Jackson Circuit Court; *Dene H. Cole-
man,* Judge; reversed.

*Geo. A. Hillhouse* and *Jno. W. & Jos. M. Stayton,*
for appellant.

The court erred in holding as a matter of law that
the son was appellant's agent, which appears to have
been done mainly on the statement reputed to the son,
that he was going to try the car out. While such state-
ment does not show agency, it is further true that the
authority of an agent cannot be proved by his own dec-
larations. 114 Ark. 300; 33 Ark. 251; 44 Ark. 213; 46
Ark. 222. Neither the statement attributed to Myatt
Volentine nor the fact that, on previous occasions, he
had been seen driving the car, are sufficient to establish
an agency or the relation of master and servant. 149
Ark. 428. The son was not engaged on his father's busi-
ness, but had turned aside for purposes of his own, at
the time of the accident. The case falls squarely within
the doctrine laid down in 133 Ark. 327; 207 Mass. 435.
Appellant's requested instruction to the effect that there
was no agency, merely because the automobile was fur-
nished for family use, should have been given. 149 Ark.
428.

*Jeffery & Bengal,* for appellee.

The act of testing the car being in furtherance of appellant's business, the son was acting within the scope of his employment, and appellant cannot screen himself from liability by setting up private instructions given by him and their violation by his son. Wood on Master & Servant, 559; 47 N. Y. 247; 7 Am. Rep. 448; 7 Am. Rep. 293; 10 Am. Rep. 369; 19 N. W. 752; Ann. Cas. 1914A, p. 1097, and note. Authority conferred, without special limitation, carried by implication authority to do all things necessary to its execution. 130 Ky. 380; Huffcut on Agency, § 249. Doubt as to whether the act was within the scope of the employment is usually resolved against the master. Thompson on Negligence, cited in 113 S. W. 249; 18 L. R. A. (N. S.) 923; 132 Am. St. Rep. 304. There was no question for the jury. Where the facts are undisputed, the court must determine whether they create an agency. 100 Tenn. 524, 66 Am. St. Rep. 761; A. & E. Enc. of Law, vol. 1 (2d ed.), p. 967; 45 S. W. 783; Mechem on Agency, § 105; 19 Ala. 165; 12 Col. App. 351.

WOOD, J. Allie Wyatt, the appellee, a minor, by her next friend, J. L. Wyatt, instituted this action against the appellant to recover damages for a personal injury. It is alleged in the complaint that, while J. L. Wyatt, with his daughter, Allie, who was ten years of age, was traveling in an automobile on the public highway, in the direction of Newport, the said automobile was struck by an automobile belonging to appellant; that appellant's car, at the time it struck the car in which the appellee was riding, was operated and controlled by Myatt Volentine, the minor son of appellant; that, at the time of the injury, appellant's son was returning from Tuckerman, to which place he had gone, under the direction of appellant, to take the car for repairs; that appellant's son, while acting as the agent and servant of appellant, negligently ran the car in which he was riding against the car in which the appellee was riding, with such great force as to hurl the car in which appellee was riding from the highway

and to overturn the same, injuring the appellee severely. Appellee described her injuries, and alleged that she was damaged, as the result of the negligence of appellant's agent and servant, in the manner indicated, in the sum of $5,000, for which she prayed judgment.

The appellant answered, and denied specifically the allegations of the complaint, and set up that, if the car in which the appellee was riding was struck by the car driven by the son of appellant and overturned, appellee's car was struck through the negligence and recklessness of the driver of the car in which appellee was riding, and through no negligence of appellant's son.

It could serve no useful purpose to set out and discuss the testimony bearing upon the issues of the alleged negligence of the driver of appellant's car and the alleged contributory negligence of the driver of the car in which appellee was riding at the time of her injury, and the nature of the injuries sustained by the appellee. It suffices to say that these were all issues for the jury, under the evidence.

Inasmuch as the appellant's car was being driven by appellant's minor son at the time of the alleged injury to the appellee, the latter predicates her right to recover on the alleged fact that, at the time of the injury, appellant's son was acting as his father's servant and agent. To sustain this allegation, appellee relies upon substantially the following facts:

The appellant testified that his children, during the year the injury occurred, went to school at Tuckerman. A part of the time he took them there himself in his car, and would leave them and bring the car home. Part of the time the children had the car, and would take it and leave it over there. His son, Myatt, drove it to and fro. He would just take it when they went to school, and would use it. On Friday evenings he would bring his two little sisters home from school. Appellant lived at Estisco. When they would go from Estisco back to Tuckerman, sometimes Myatt would take them in the car. He did this with appellant's direction and for appellant's

benefit.   Myatt used the car a few other times for appellant's benefit, whenever appellant had some errand for him to do.   He sometimes brought people to the farm for appellant.   It was his custom to come home on Friday evenings with the girls, and during that time he would have full control of the operation of the car.   Myatt had been driving the car about three years.   He used it when he asked permission, or when appellant directed him or told him to use it.   On the day the accident happened he had given Myatt directions in regard to the car.   Appellant had made arrangements with one Homer Skinner about fixing the brakes on the car, and told Myatt to take the car to Skinner, and to stay and help him fix it, in order to learn something about how to do it himself.   He told Myatt that, when they were through, to have Skinner test the brakes and see if they were all right, and then to put the car up.   Myatt had no authority to test the car himself, and he did not direct him to do so—did not direct him to drive the car down the road from Tuckerman towards Campbell that afternoon, and did not know that he was going to do so, or had done so, until after the accident happened.   It was not done either by appellant's authority or consent.   Appellant told Myatt to take the care to the garage, and, when it was fixed, to take it back where appellant kept it, as Swan's place in Tuckerman.   If the appellant's son had started the car to Estisco that day, he would have been going the way he was going at the time of the accident.

Myatt Volentine testified concerning his use of the car as follows:   One morning about eight o'clock his father sent him down to Homer Skinner to have the car fixed—overhauled.   Homer and the witness ground the valves and put in new rings and new brake linings, and got the car done about two o'clock.   Then witness and the mechanic drove the car down the rock road north of Tuckerman, and tried it out.   It ran good—the brakes were good.   Then they came back to Tuckerman.   The mechanic turned it over to witness as finished, and witness went by the restaurant at Tuckerman, and there was

a young man standing there by the name of Sam Campbell. Witness asked Campbell if he wanted to go riding a little piece. Witness told Campbell that he was going out to try the car. Witness stated that his father told him to take the car up there to the garage and fix it. Witness guessed that his father wanted him to try it out and then bring it home. When they were living at Estisco, and the children were going to school at Tuckerman, witness had occasion to go from Tuckerman to Estisco when his father told him to. He went in the car and drove it himself. Any time his mother wanted to come over to Tuckerman, she would write a letter and tell him to come, and he would go over and get her. In the meantime his father had the car part of the time, and witness had it part of the time, back of the house at Swan's barn. Witness would go over there and get it—most of the time every Friday. Witness had driven the car ever since they had it, every time his father told him to. Witness was present when the work was done by Skinner, and helped supervise the work. Witness knew what was necessary to be done, and could make the ordinary repairs himself, if it was not out of witness' line.

After defining the issues, the court, among other instructions, gave the following: "No. 1-A. You are instructed that, under the evidence, the law makes the defendant, Volentine, in this case liable for the negligence, if any, of his son Myatt, in operating his car at the time of the alleged injury."

"No. 3. If you find from a preponderance of the evidence in this case that defendant's son, while operating defendant's car which caused the injury complained of, approached from the rear of the car in which plaintiff was riding, and undertook to pass said car, without giving sufficient notice of his approach to the person operating plaintiff's car that would enable him to appreciate the threatening danger from defendant's car, and to turn aside from the course in which he was traveling before the collision occurred, then you would be authorized to find for the plaintiff."

"No. 4. If you find from a preponderance of the evidence in this case that defendant's son, while operating defendant's car at the time of the alleged injury, approached from the rear the car in which plaintiff was riding, and, while attempting to pass it, negligently permitted his car to come in contact with said car, causing the injury complained of, you would be authorized to find for the plaintiff, unless you find that the driver of the car in which plaintiff was riding was guilty of negligence which contributed to the injury; and the acts constituting such negligence are to be determined from all the facts and circumstances in this case, which are defined by the instructions I have given you."

Among other prayers for instructions the appellant presented the following:

"No. 1. You are instructed that, in order for the plaintiff to recover in this case, it must appear by a preponderance of the evidence:

"First. That the car driven by defendant's son struck the car in which plaintiff was riding, and caused it to be thrown from the road, and inflicted the injury sued for.

"Second. That, at the time said injury is alleged to have been sustained, defendant's son was acting as defendant's agent or servant in driving defendant's car.

"Third. That the striking of the car in which plaintiff was riding was due to the negligence of defendant's son.

"The burden of proof is upon the plaintiff to establish these facts, unless they appear from the defendant's evidence."

"No. 5. You are instructed that no liability can be imposed upon the defendant in this case simply because he is the father of the person who was driving his car at the time the injury is alleged to have occurred, and that, before you can find a verdict for the plaintiff in this case, it must appear, from a preponderance of the evidence, that defendant's son, at the time the injury is alleged to have occurred, was the agent or servant of

defendant, and that, in driving the car upon such occasion, he was engaged about his father's business, and the burden is upon the plaintiff to establish these facts, unless they appear from the evidence of defendant.

"No. 6. The mere fact that the defendant is the father of the person who was driving his car at the time the injury sued for is alleged to have occurred, together with the facts that he had supplied the car for the use of his family, and at times permitted his said son to use said car for the son's own purposes, would not, taken alone, be enough to establish, at the time of such accident, the relationship of master and servant or principal and agent between defendant and his said son.

"No. 7. In determining whether the defendant is liable in this case, you should first find, from all the evidence in the case, whether or not the defendant's son, at the time when and the place where the injury occurred, was using defendant's car upon defendant's business; and next, whether or not said son was negligent in so using said car, and if you find from the evidence that, at such time, said son was using said car, not about his father's business, but solely for purposes of his own, then you should return a verdict for the defendant herein, without considering further whether or not said injury was due to the negligence of said son."

"No. 8. You are instructed that, if the defendant gave his son specific directions with reference to taking his automobile to a repair shop and bringing it home after such repairs were made, and that said son, in carrying out such directions, and before he complied therewith, departed from such instructions, and took said car out purely for his own purposes, and not in obedience to any direction from defendant, or in furtherance of defendant's business, and, while so doing, the injury sued for occurred, then the defendant would not be liable therein, regardless of whether or not such injury was due to the negligence of said son."

The court modified appellant's prayer for instruction No. 1 by striking out the second subdivision, and

gave the same as modified. The appellant duly excepted to the above rulings of the court. There was a verdict in favor of the appellee in the sum of $2,500. Judgment was entered in her favor for that sum, from which is this appeal.

1. The court erred in telling the jury as a matter of law that the appellant was liable for the negligence of his son, if any, regardless of whether or not the son of appellant at the time of the injury was the agent or servant of appellant and engaged about his father's business, and erred in striking out the second subdivision of appellant's prayer for instruction No. 1. *Norton* v. *Hall,* 149 Ark. 428. These were issues for the jury. We do not concur with learned counsel for appellant in the view that there was no testimony whatever tending to prove that appellant's son at the time of the injury was acting as the agent of his father in driving the automobile, and that there was no testimony tending to prove that he was acting within the scope of his agency, and that the court therefore erred in not giving appellant's prayer for a directed verdict in his favor. These issues should have been submitted to the jury. Under all the testimony in the record, it was for the jury to say whether or not the son of appellant at the time of the injury was acting as the agent and servant of appellant and engaged about his father's business. If he was the agent and servant of his father, and at the time of the injury was acting within the scope of his employment—that is, engaged about any business that his father had directed him to do—then the father would be liable, even though at the time of the injury the son and servant was not acting under the immediate orders or directions of his father and master, and even though at the time of the injury he might have been acting contrary to his father's instructions. On the other hand, if Myatt Volentine was not the agent or servant of his father, or, if he was such agent or servant, but had stepped aside from his father's business and was engaged purely in business or pleasure

of his own concern, then his father and master would not be liable for his tortious act.

The rules of law applicable to the facts of this record are stated in *Healey* v. *Cockrill*, 133 Ark. 327, and cases there cited. The court should have submitted the issues, under the testimony, to the jury according to the doc trine there announced.

The court did not err in refusing to give appellant's prayers for instructions Nos. 5 and 6, because these instructions were argumentative in form, but the law applicable to the facts was correctly declared in appellant's prayers for instructions Nos. 7 and 8, and these should have been given. It follows, from what we have said, that the court erred in giving its instructions Nos. 3 and 4, as well as No. 1, because they assumed that appellant's son was acting as his agent and within the scope of his employment at the time of the injury. Instruction No. 3 was also erroneous because it assumed that the appellant's car caused the injury, and that appellant's car threatened danger to the appellee. This instruction was erroneous in not submitting these issues to the jury.

The appellant objects to the ruling of the court in giving instruction No. 6, on the measure of damages, on the ground that it permitted the jury to consider as an element of damages the disfigurement to appellee's body, when, as appellant contends, there was no testimony tending to prove that appellee's body was or would be disfigured by the injury. The doctor who had been treating the appellee testified that, for three months past, she did not seem to have the use of her arm that she should have, from a loss of nerve stimulus; that it was then in that condition. There was a loss in motion of the arm as a result of the injury. She did not have the same use of her right arm as of the left. No one could say what the outcome would be. Injuries done to the brachial plexus sometimes resulted in complete paralysis. She might have complete paralysis. There is a tendency in that direction. If she had complete paralysis, she could

not use her arm.    This testimony justified the court in submitting the disfigurement of body as an element of damage.

2.    The court permitted the witness Alvis Jackson to testify, over the objection of appellant, that Sam Campbell, who was in the car with appellant's son at the time of the collision, told witness, in the presence of appellant's son, that the latter, before he got up to appellee's car, said he thought it was a jitney, and told Campbell that he intended to hit the car in which appellee was riding in the back, and that appellant's son did not deny this statement.

While counsel for appellant in their argument have not insisted that the judgment should be reversed because of the alleged error in permitting the above testimony, yet, in view of a new trial, we deem it proper to say that the above testimony of Jackson would not be competent as substantive evidence of negligence on the part of Myatt Volentine.    *Itzkowitz* v. *Ruebel & Co.,* 158 Ark. 454-59.

We find no other reversible errors in the record, but, for those indicated, the judgment is reversed, and the cause is remanded for a new trial.