B. A. ADKINS *v.* Sam KELLEY D/B/A KELLEY'S GRILL

5-4447                                    424 S. W. 2d 373

Opinion delivered February 26, 1968

*Henry & Boyett,* for appellant.

*Lightle & Tedder,* for appellee.

J. FRED JONES, Justice. B. A. Adkins filed suit in the White County Circuit Court against Sam Kelley, doing business as Kelley's Grill. The suit was for $25,-000.00 compensatory and $25,000.00 punitive damages for personal injuries alleged by Adkins as a result of injuries he sustained in an altercation with Kelley's employees in the kitchen of Kelley's Grill. A jury trial resulted in a verdict upon which judgment was entered in favor of Adkins for $300.00 compensatory damage and nothing for punitive damage, and Adkins has appealed. The only question presented to us is whether the trial court erred in instructing the jury. Appellant contends that there was such error, and he relies on the following points for reversal:

> "In modifying plaintiff's (appellant's) instruction No. 7 on damages and in giving the court's modified version:
>
> "The trial court erred in holding as a matter of law that AMI 2202 was not a measure or element of damages, rather a factor in determining other elements.
>
> "The trial court erred in modifying AMI 2208 to limit, as a matter of law this element or measure of damages to any embarrassment or mental anguish suffered as a result of any scars and disfigurement or visible results of the injury."

The facts very briefly are these: The appellant, Adkins, had been a regular customer in taking meals at appellee Kelley's Grill. On the evening of August 7, 1963, appellant met some invited guests at Kelley's Grill for dinner. A waitress at the Grill took their orders and when the food was not served after a considerable period of time, they were advised by the waitress, upon inquiry, that the cooks in the kitchen of the Grill had refused to prepare their orders. Appellee,

Kelley, was away on business and had left his brother in charge of the cafe. The brother was temporarily off the premises, so appellant went into the kitchen to determine why the cooks had refused to prepare the food. An altercation ensued and one of the cooks struck appellant with a large knife or meat cleaver, resulting in a rather extensive laceration, about eight inches in length, extending along the left side of appellant's neck from up in the hair line near the occipital protuberance to near the left clavicle.

At the trial of the case, Dr. T. L. Adair, who treated Mr. Adkins, testified that Mr. Adkins has some residual limitation of motion in his neck because of the injury, and as to the specific cause of this, Dr. Adair testified as follows:

"Q. What, doctor, medically would be the cause of that?

A. Probably scar formation, or shortening. Atrophy from disuse and shortening, and scar.

Q. If it were scar formation, would it be that that is visible, or that beneath the skin?

A. It would probably be the scar to the muscle fascia, or sheath, muscle sheath and fascia. The skin might limit him some. I mean it might limit him some, but I don't think the scar is big enough for that."

The trial court refused to give appellant's requested instruction No. 7, on the measure of damages, as offered by appellant, but did give it as modified by the court, and this is the error complained of by the appellant on this appeal.

Appellant's requested instruction No. 7 followed the general instructions laid down in AMI 2201 in setting out the elements of damage to be considered. It followed AMI 2202 (B) in paragraph 1 as to the nature, extent,

duration, and permanency of any injury, and followed AMI 2208 in paragraph 6 as to scars, disfigurement, and visible results of injury.

Appellant requested instruction No. 7, as follows:

"If you find for the plaintiff, you must then fix the amount of money which you find will reasonably and fairly compensate him for any of the following elements of damages:

1. The nature, extent, duration and permanency of the injury.

2. The reasonable expense of any necessary medical care, treatment and services received.

3. Any pain, suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future.

4. The value of any earnings lost or reasonably certain to be lost in the future.*

5. The present value of any loss of earning capacity or ability to earn in the future.*

6. Any scars and disfigurement or visible results of his injury."

The trial court gave appellant's instruction No. 7 in a modified form, as follows:

"If you find for the plaintiff, you must then fix the amount of money which you find will reasonably and fairly compensate him for any of the following elements of damages:

1. The reasonable expense of any necessary medical care, treatment and services received.

---

*We do not imply that *both* of these instructions, AMI 2206 and AMI 2207, should have been given in the form requested. (See note on use AMI 2207.)

2. Any pain, suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future.

3. The value of any earnings lost.

4. The present value of any loss of earning capacity or ability to earn in the future.

5. Any embarrassment or mental anguish suffered by reason of any scars and disfigurements or visible results of his injury.

In arriving at these amounts, you may take into consideration the nature, extent, duration and permanency of his injuries.

Whether any of these things have been proved is for you to decide."

Thus, we see by modifying paragraph 1 of the instructions requested by the appellant (AMI 2202), the trial court eliminated the jury's consideration of "nature, extent, duration and permanency of the injury" as elements of damage, but confined the jury's consideration of these elements as *factors to be considered* in assessing the *"amounts"* of the other elements of damage. In this, we conclude, the court erred.

In volume 18 of Arkansas Law Review, at p. 305, is found the following statement:

"Loss of earning capacity as an element of damages is sometimes confused with *permanency of the injury, which is universally recognized as a separate element of damage.* A lawyer or minister might lose an arm with no loss of earning capacity, but he would still be entitled to recover for the permanency of his injury. A hopeless mental defective with no earning capacity can recover for loss of his sight, because he has sustained a permanent injury. A recent Oklahoma decision makes plain the distinction between these two *separate elements* of damages

against the contention that a double recovery was being allowed. It has been said that a permanent injury is one that deprives plaintiff of his right to live his life in comfort and ease without added inconvenience or diminution of physical vigor, but there may be no pecuniary loss or loss of earning capacity in conjunction." (Emphasis supplied.)

This Law Review article is replete with footnotes citing many cases from this and other jurisdictions, including *Shebester, Inc.* v. *Ford,* 361 P. 2d 200 (Okla. 1961). Also noted is 29 NACCA L. J. 195, with an exhaustive comment on the point. The comment in 29 NACCA Law Journal, cited in the footnote, supra, is comprehensive, with many pertinent citations on this point, and states on pages 198 and 200 in accordance with our own views, that:

"It is sometimes incautiously stated that a verdict awarding damages for future disability covers only pain and suffering, beyond the special items (expenses and loss of earning power). Such a view is inaccurate, because compensation is routinely awarded for *disability per se,* as the *Shebester* case (supra) points out, and also for the non-pecuniary, non-pain aspects of the disabled condition, such as deprivation of a normal life and of a chance to pursue non-economic hobbies or recreation.

\* \* \*

As the principal case, *Shebester,* demonstrates, permanent and continuing disability is not only an element of damages itself but also a type of injury, which when satisfactorily proved, is the basis of award of the other elements of damages, such as loss of capacity to work or post-trial pain and suffering."

We are of the opinion that the trial court erred in its failure to give AMI 2202 as offered under paragraph

1 of appellant's requested instruction No. 7 and in modifying this instruction as pointed out, supra.

Appellee contends that since the permanency of the injury was in dispute, the instruction originally offered by appellant [AMI 2202 (B)] was not the proper instruction, but that AMI 2202 (C) should have been used. We note that if permanency was disputed by appellee here, it was only by the general denial in his answer to appellant's complaint and not by evidence presented to contradict the testimony of Dr. Adair, when he testified as follows:

"... He has some residue. He's reached a plateau of improvement, and there is some residue to his injury. And those things that you mentioned, of scar and pain and limitation of motion are the residue. And I will say that he has reached a plateau, you know, he probably won't get any better from that."

Appellee also contends that even if there was error, it was harmless and not prejudicial to appellant. With this we cannot agree. A close inspection of the elements of damages in the instruction given, shows that none of these elements pertain to compensation for permanent injury. Limiting the consideration of the jury to permanency as a factor in the other elements of damage is not sufficient when permanency itself is an element. With this in mind, we cannot say that the error was harmless. The evidence was sufficient for the jury to be charged on permanency of appellant's injury as an element of damages.

We conclude that the trial court erred, and this case must be reversed, because of the modification the trial court made in AMI 2208. Paragraph 5 of the instruction, as modified by the trial court, takes scars, disfigurement and visible results of injury, out of the elements of damage where they belong under AMI 2208 and where they have been at least since 1914. *Ferguson & Wheeler*

*Land, Lumber & Handle Company* v. *Good,* 112 Ark. 260, 165 S. W. 628. This instruction, as modified, limited the jury's consideration to *embarrassment and mental anguish* suffered by reason of any scars and disfigurement or visible results of the injury. Scars and disfigurement may be real *elements of damage* separate and apart from mere embarrassment or the mental anguish they may cause. (See *Volentine* v. *Wyatt,* 164 Ark. 172, 261 S. W. 308, and other cases cited in comment under AMI 2208). The appellant was entitled to AMI 2208, as requested under proof in this case, and the trial court erred in its refusal and in its modification.

We feel that this case calls for reiteration, with added emphasis, of the per curiam order of this court on April 19, 1965, wherein it was said:

> "If Arkansas Model Jury Instructions (AMI) contains an instruction applicable in a civil case, and the trial judge determines that the jury should be instructed on the subject, *the AMI instruction shall be used unless the trial judge finds that it does not accurately state the law. In that event he will state his reasons for refusing the AMI instruction.* Whenever AMI does not contain an instruction on a subject upon which the trial judge determines that the jury should be instructed, or when an AMI instruction cannot be modified to submit the issue, the instruction on that subject should be simple, brief, impartial, and free from argument." (Emphasis supplied.)

The purpose of the AMI was to save valuable time in settling instructions at the trial level, to attain uniformity, to reduce confusion, to allow composition of instructions by the courts and attorneys with confidence and ease, and insofar as possible, with such accuracy as to reduce the number and necessity of appeals. The per curiam requirement, supra, recognizes the necessity for flexibility in the use of AMI. Thus, the trial judge may modify if he feels that AMI does not accurately

state the law, and, by placing his reasons in the record, the attorneys in considering an appeal, and the appellate court, in considering the points relied upon, may go straight to the heart of the alleged error and adjudge the validity of the refusal or modification of the instruction with greater dispatch and with greater accuracy as to specific point relied upon. To accomplish the purposes of AMI we must insist upon its use where applicable; to hold otherwise, would place us back into the confusion and inaccuracy of the pre-AMI era and destroy the usefulness and purpose of AMI.

For the errors indicated, the judgment of the trial court is reversed and this cause remanded for a new trial.

Reversed and remanded.

BROWN, J., concurs.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot see how there was any prejudice in the instruction on disfigurement as given by the court on the facts in this record. All the cases I have been able to find in this state base this element of damage on humiliation and embarrassment, and other elements covered in the instruction that was given, *Ferguson & Wheeler Land, Lumber & Handle Co.* v. *Good,* 112 Ark. 260, 165 S. W. 628; *Gaster* v. *Hicks,* 181 Ark. 299, 25 S. W. 2d 760; *Perkins Oil Co. of Delaware* v. *Fitzgerald,* 197 Ark. 14, 121 S. W. 2d 877.

I can conceive of many circumstances in which there will be additional damages, but I do feel that the AMI instruction as drawn permits, and actually suggests, double damages, particularly where the instruction is given to include the nature, extent, duration and permanency of the injury as an element. Whatever damages

may be recoverable for disfigurement that are not covered in the elements permitting recovery for earnings to be lost in the future, loss of earning capacity and pain and suffering and mental anguish are certainly included in the nature, extent, duration and permanency of the injury. It is quite reasonable to suppose that one could be disfigured so as to handicap him in earning a livelihood and to require future medical attention, but I cannot see why disfigurement should be considered separately any more than injuries to the back and neck in the usual whiplash case or non-disfiguring injuries to other parts of the body. If there is any element that is not covered in case of disfigurement in the usual elements of damage, then I cannot see how it would be any more than humility and embarrassment which I feel are covered by mental anguish. In this respect I dissent from the majority.

I submit that the model instruction should be re-examined and more specific guides given for use of "disfigurement" as an element of damages.