**Victor JACKSON, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. LR–C–79–81.**

United States District Court, E. D. Arkansas, W. D.

Nov. 24, 1981.

---

**24.**  *See Teamsters Local 30 v. Halms Express,* 100 LRRM 2421 (C.A.3, 1979).  *But see Eazor* *Express  v.  Teamsters,*  520  F.2d  951  (C.A.3, 1975).

James J. Leonard, Jr., Langerman, Begam, Lewis, Leonard & Marks, Phoenix, Ariz., James R. Rhodes, III, Little Rock, Ark., for plaintiff.

A. Doug Chavis, Asst. U. S. Atty., Charles J. Pugh, Veterans Administration, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

WOODS, District Judge.

### FINDINGS OF FACT

*Stipulation*

1. That the plaintiff, Victor Jackson, is a resident of the County of Pulaski, State of Arkansas.

2. That the amount in controversy in question exceeds the sum of $10,000.00.

3. That on or about the 10th day of October, 1974, the plaintiff, Victor Jackson, entered the Veterans Administration Hospital, Little Rock, Arkansas, for the removal of a lipoma on his right flank. This surgery was accomplished on or about October 18, 1974. The plaintiff agreed with the Veterans Administration Hospital that he would submit to the care and treatment of its employees, and in consideration of this agreement by the Veterans Administration Hospital, that hospital agreed to have its employees examine, diagnose, counsel, care for and treat the plaintiff, Victor Jackson, with the care, skill, and diligence consistent with their position as specialists in the field of medicine, and specifically in the field of general surgery and anesthesiology.

4. That while under the care and treatment of the employees of the Veterans Administration Hospital, and subsequent to the operative procedure performed on October 18, 1974, the plaintiff, Victor Jackson, sustained cardiopulmonary collapse.

5. That during the time period of October 17 through October 18, 1974, the employees of the defendant, who were at all times acting within the course and scope of their employment, were negligent and careless in accomplishing the above mentioned medical, surgical, and post-surgical care, and failed to apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of their profession in good standing engaged in the same type of practice and speciality in the locality in which they practice, or in a similar locality.

6. That as a direct and proximate result of the negligence and carelessness of the employees of the defendant, plaintiff, Victor Jackson, sustained injury.

7. The stipulation also included a statement of the issues in the case.

### Statute of Limitations

8. From October 18, 1974 up to and including March 2, 1977, when Mr. Jackson saw Dr. Miles, Victor Jackson was continuously under the care of the Veterans Administration doctors.

9. At all times Mr. Jackson was informed that the problems he had following the surgery of October 18, 1974 were caused by a "stroke" or "cardiac arrest."

10. At the time of his deposition in October of 1980, Dr. Miles did not have a specific recall but felt that it was "entirely possible" that he could have commented to Mr. and Mrs. Jackson that he doubted seriously that his problems were caused by a "CVA." (Miles' deposition, p. 16.)

11. At the request of his disability insurance carrier, Mr. Jackson was seen by Dr. Kimber Stout on March 2, 1977. Dr. Stout opined in a letter to Mr. Jackson (under date of April 6, 1977) that he had a widespread neurological abnormality which was apparently the result of complications suffered at the time of the surgery to remove the lipoma.

12. An administrative tort claim sounding in medical negligence was filed on Mr. Jackson's behalf on June 27, 1978.

13. The administrative tort claim was denied on November 27, 1978.

14. The instant case was filed on February 21, 1979.

### Damages

15. The injury sustained by plaintiff, which the United States stipulated to be the proximate result of its negligence, consisted of diffuse organic brain damage affecting all areas of his emotional and physical behavior.

16. Within a period of three years following his massive brain injury, plaintiff's hip sockets were essentially destroyed with both femoral heads protruding into the pelvic cavity.

17. At some time during this period, plaintiff sustained a pathological fracture of the inferior ramus on the right.

18. It is reasonably and medically probable that the destruction of Mr. Jackson's hip joints and the fracture of the ramus were

caused by either osteoporosis or violent seizure activity and that these conditions were a proximate result of the injury sustained on October 18, 1974.

19. Plaintiff has sustained a permanent injury, and because of the permanency of his injury, he is entitled to be compensated in the sum of $150,000.00.

20. Plaintiff has undergone pain and suffering and mental anguish in the past and will undergo pain and suffering in the future as a result of the injury inflicted by defendant's negligence, and he is entitled to be compensated therefor in the sum of $50,-000.00.

21. Because plaintiff is confined to a wheelchair and has considerable difficulty with locomotion, plaintiff displays visible results of the injury which defendant's negligence has inflicted upon him, and he is entitled to compensation for the visible results of his injury in the sum of $25,000.00.

22. Plaintiff has required in the past and will require in the future necessary help in his home as a result of his injury. Plaintiff is entitled to the sum of $50,000.00 as caretaking expense.

23. Victor Jackson is presently receiving, and has received since October, 1980, disability income in the amount of $1,078.00 per month under the provisions of 38 U.S. C.A. § 351.

24. This disability award under 38 U.S. C.A. § 351 compensates plaintiff for any and all past lost income resulting from the incidents in question, as well as any loss of future earning capacity. Further, this disability award compensates Mr. Jackson for any and all past and future direct medical expenses resulting from the incident in question.

25. However, the general aspects of damage, encompassed in the above awards, resulting from the general damages in question, are items of damage sustained by Mr. Jackson in addition to any benefits to which he is entitled under the Veterans Benefit Act and which he is presently receiving. *Christopher v. U. S.*, 237 F.Supp. 787 (E.D.Pa.1965).

26. In making the above award, the Court has specifically considered the past and future VA benefits accruing to Mr. Jackson, and the judgment was reduced to exclude any possibility of a duplicate recovery under both the Veterans Benefit Act and the Federal Tort Claims Act.

27. The intangible aspects of damage listed above have no bearing on the disability rating a veteran receives and can not be construed to be a duplication of benefits provided to Victor Jackson under the Veterans Benefit Act.

## CONCLUSIONS OF LAW

### *Statute of Limitations*

1. Federal law governs the time at which tort claims accrue against the United States Government.

2. "The discovery rule" is applicable in medical negligence claims under the FTCA; that is, the statute of limitations does not begin to run at the time of the act of medical negligence, but rather, begins to run when the claimant has discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged medical negligence. See *Waits v. U. S.*, 611 F.2d 550 (5th Cir. 1980) particularly for the court's interpretation of *Kubrick v. U. S.*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

3. A medical negligence claim accrues when the claimant knows, or should know both the existence of the injury and "the critical facts" concerning the cause of the injury. *Waits v. U. S., supra; Quinton v. U. S.*, 304 F.2d 234 (5th Cir. 1962); and *Lee v. U. S.*, 485 F.Supp. 883 (S.D.N.Y. 1980).

4. A medical negligence claim does not accrue where a reasonably diligent claimant is told and relies upon a medical explanation which fails to disclose the "critical facts" concerning the cause of the injury. *Waits v. U. S., supra; Quinton v. U. S., supra,* and *Lee v. U. S., supra.*

5. A reasonably diligent person would not have known or suspected a cause or connection between the "stroke," the subsequent "cardiac arrest," and the stipulated medical negligence of the VA Hospital personnel before, during and immediately after Victor Jackson's surgery in October of 1974.

6. Victor Jackson did not know, and could not reasonably have discovered, that the "stroke" he sustained in October of 1974 was caused by negligent treatment at the VA Hospital.

7. Critical facts concerning Victor Jackson's injury and its causation were concealed by VA personnel during October, 1974. These facts were not discovered, nor could they have been reasonably discovered, by Victor Jackson prior to some time after March 2, 1977.

8. Victor Jackson believed that he suffered a "stroke" in the natural course of events closely related in time to a surgical procedure in October, 1974; Victor Jackson was unaware of the acts and omissions of the VA Hospital personnel which caused the alleged "stroke" until some time after March 2, 1977 when lawyers obtained all of the medical records from the VA Hospital.

9. Knowledge of the occurrence of a "stroke" or a "cardiac arrest" following a surgical procedure is not to be equated with knowledge of negligence, nor is it to be equated with knowledge of the "critical facts" concerning causation.

10. The defendant Government has not shown that Victor Jackson had sufficient knowledge, or should have had sufficient knowledge, to cause his claim to accrue prior to some time after March 2, 1977.

### Damages

11. Under the Arkansas Statutory Mortality Tables, plaintiff has a life expectancy of 16 years.

12. Under Arkansas law permanency of the injury is a separate element of damage. In *Adkins v. Kelley*, 244 Ark. 199, 424 S.W.2d 373 (1968) the court quoted with approval the following quotation from an article in Volume 18 of the Arkansas Law Review at page 305:

"Loss of earning capacity as an element of damages is sometimes confused with permanency of the injury, *which is universally recognized as a separate element of damage....* it has been said that a permanent injury is one that deprives plaintiff of his right to live his life in comfort and ease without added inconvenience or diminution of physical vigor, but there may be no pecuniary loss or loss of earning capacity in conjunction." (Emphasis by Court.)

424 S.W.2d at 375.

The Arkansas Court also referred to a comment in 291 NACCA Law Journal to the case of *Shebester, Inc. v. Ford*, 361 P.2d 200 (Okl.1961):

"It is sometimes incautiously stated that a verdict awarding damages for future disability covers only pain and suffering, beyond the special items (expenses and loss of earning power). Such a view is inaccurate, because compensation is routinely awarded for *disability per se*, as the *Shebester* case (supra) points out, and also for the non-pecuniary, non-pain aspects of the disabled condition, such as deprivation of a normal life and of a chance to pursue non-economic hobbies or recreation."

424 S.W.2d at 375.

At the time of his injury, plaintiff was personable, intelligent and active. He enjoyed gardening and doing minor repair work in his own home and those of his neighbors. He has been reduced to the status of an invalid with subnormal intelligence and a severe personality disorder. We regard this element of damage as most substantial. But for his advanced age (60 years) we would make the award higher.

13. The record is replete with evidence of the pain, suffering and mental anguish undergone by plaintiff in the past. We believe that it has been shown to a reasonable certainty that future pain and suffering will occur. *McCord v. Bailey*, 195 Ark. 862, 114 S.W.2d 840 (1938). Damages

for future pain and suffering are not reduced to present value. McCormick, *Damages* 318 (1935). Mental anguish can be inferred from the degree of physical pain. *Chicago, R.I. & P. R.R. Co. v. Caple*, 207 Ark. 52, 179 S.W.2d 151 (1944).

██ 14. Plaintiff can recover for the visible nature of his injury. *Volentine v. Wyatt*, 164 Ark. 172, 261 S.W. 308 (1924). This is a separate element of damage and not a factor to be considered in connection with plaintiff's embarrassment and mental anguish. See Comment to Arkansas Model Jury Instructions, No. 2208. In his case the results of plaintiff's severe injury are clearly visible. He is confined to a wheel chair. He has difficulty moving about. He still undergoes seizures as a result of the brain damage sustained.

██ 15. Plaintiff is entitled to recover for caretaking expense in his home required as a result of his injury. *Perkins Oil Co. of Delaware v. Fitzgerald*, 197 Ark. 14, 121 S.W.2d 877 (1938). It matters not that these services are provided by his wife. In order to render the full-time care that plaintiff requires, she has had to quit her job as a school teacher. Plaintiff urges that we measure these damages by her salary as a school teacher during his life expectancy. We do not regard this as a proper measure of damages. Her value as a school teacher does not equate with her value as a caretaker. No proof has been adduced as to the monetary value of this service. We are in agreement that plaintiff is entitled to a substantial award for caretaking expense, even though these services are now provided by his wife who undoubtedly took a marriage vow to care for him in sickness and in health. His wife may not always be able to care for him, or she may predecease him. In assessing the value of these services over and beyond the services a wife ordinarily provides for her husband, we are entitled to draw upon our experience in the affairs of life. We have valued such services in our findings of fact.