Herbert Chester MATTHEWS *v.* Michael E. RODGERS

83-71                                         651 S.W.2d 453

Supreme Court of Arkansas
Opinion delivered May 31, 1983

*James C. Cole,* for appellant.

*Richard S. Muse* and *Sam L. Anderson, Sr.,* for appellee.

ROBERT H. DUDLEY, Justice. This appeal raises questions about an alleged implied bias of the trial judge and his award of compensatory and punitive damages to the victim of an intentional tort. We affirm the judgment. Jurisdiction over this tort case is in this Court pursuant to Rule 29 (1) (o).

The case was tried before the court sitting as a jury. The facts surrounding the intentional tort are in dispute but the testimony may be summarized as follows. The appellee, plaintiff Michael Rodgers, testified that on June 30, 1979, he, his wife, and a friend, John Martin Smith, were unarmed and in their parked vehicle at a Dallas County gravel pit. The appellant, defendant Herbert Matthews, armed with a shotgun, walked up to appellee and stated that he was going to kill him. As the appellant got closer the appellee jumped out of his vehicle and the appellant fired a .20 gauge shotgun directly into appellee's abdomen. The appellee's wife and John Martin Smith testified to the same sequence of events. This version was corroborated in part by the testimony of the two deputy sheriffs who investigated the mayhem.

The appellant's account of the event was that the appellee grabbed the shotgun causing it to fire and injure himself.

The trial judge awarded $39,500 in compensatory damages and $67,000 in punitive damages.

The appellant first contends the judgment should be set aside because of an implied prejudice on the part of the trial judge. He does not contend the trial judge was intentionally dishonest or that he was even aware of his bias but that, as a matter of law, bias must be implied.

The implied bias is alleged to exist because of three factors: (1) the trial judge coerced appellant into agreeing to a trial by the court; (2) the judgment was imprinted on paper with the name and address of the appellee's attorneys in the margin; and (3) the opposing counsel served as a pallbearer at the funeral of the judge's father. The arguments are without merit.

In this case the judge was not disqualified on constitutional or statutory grounds. *See* Ark. Const. art. VII, § 20; Ark. Stat. Ann. § 22-113 (Repl. 1962).

The fact that a judge may have, or develop during the trial, an opinion, or a bias or prejudice does not make the trial judge so biased and prejudiced as to require his disqualification in further proceedings. *Walker* v. *State*, 241 Ark. 300, 408 S.W.2d 905 (1966). Whether a judge has become biased to the point that he should disqualify himself is a matter to be confined to the conscience of the judge. *Narisi* v. *Narisi*, 229 Ark. 1059, 320 S.W.2d 757 (1959). The reason is that bias is a subjective matter peculiarly within the knowledge of the trial judge. We find no Arkansas case where a trial judge has stated that he was without prejudice and could hear a case and, without more, we reversed that decision. Thus, absent some objective demonstration of prejudice, it is a communication of bias which will cause us to reverse a judge's decision on disqualification. In this case there was no objective showing of prejudice.

Appellant first contends that he was coerced into a trial by the court. This argument is based on a mimeographed form of pretrial order which requires the attorney who is to conduct the trial to appear at pretrial with the authority to enter binding stipulations, including authority to waive jury trial. Not one word of spoken coercion is alleged to have occurred and appellant did not waive a jury until over four months after the pretrial order. On two occasions after the pretrial conference but before the trial the parties appeared in court and nothing was said about a jury trial. The argument is without merit.

Appellant next argues bias was shown because the judgment was typed on paper which had the name and address of appellee's attorney printed on the margin. Again, we find no merit in the argument. Frequently trial judges request the attorney for the prevailing party to prepare the precedent. The appellant does not contend that such a practice is prejudicial but contends that it leaves an impression of prejudice with the client. We understand how a judgment typed on paper with the attorney's name printed

in the margin might leave an unintended impression upon a layman and we encourage the trial judges to request the prevailing attorney to prepare the precedent on plain paper. However, we do not find that type of implied bias which would cause us to reverse the case.

The next argument with regard to bias is more difficult. This case was tried on February 23 and 24, 1982. On March 24, the trial court commenced his memorandum of decision and completed it on March 26. Five days later, on March 31, 1982, the father of the trial judge died. The mortuary which made the funeral arrangements asked the judge if he wanted any attorneys to serve as pallbearers. He responded affirmatively and the funeral director suggested that at least two attorneys be named. The judge considered both of the attorneys involved in this case but named only one, the appellee's attorney. The funeral home then contacted the attorney who served as a pallbearer on April 3. On April 5, the memorandum of opinion was filed and on April 9 the judgment was entered. Thus, appellee's attorney served as pallbearer eight days after the decision had been made but two days before it was communicated to the parties.

In *Farley* v. *Jester*, 257 Ark. 686, 692, 520 S.W.2d 200 (1975), we stated:

> However, court proceedings must not only be fair and impartial — they must also appear to be fair and impartial. This factor is mentioned in a Comment found in 71 Michigan Law Review 538, entitled, "Disqualification for Interest of Lower Federal Court Judges: 28 U.S.C. § 455", as follows:
>
>> "Another factor to be considered in a judge's decision to disqualify is the contention that the appearance of impartiality is as important, if not more so, than actual impartiality. In 1952, Justice Frankfurter explained his disqualification in a case by stating that 'justice should reasonably appear to be disinterested as well as be so in fact.' The Supreme Court gave support to this view in the due process

context when in *Murchison* Justice Black wrote for the Court:

> [T]o perform its high function in the best way 'justice must satisfy the appearance of justice.'

> More recently the Court set aside an arbitration award and stated that '(a)ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias.'"

Likewise, in the Code of Judicial Conduct, prepared by the Special Committee on Standards of Judicial Conduct of the American Bar Association, and adopted by this court by *Per Curiam* Order of November 5, 1973, the Commentary to Canon 2 points out that not only must a judge avoid all impropriety, but he must avoid also any appearance of impropriety.

In each of the three cases in recent years where we held that a trial judge should have disqualified there was a bias and a communication of that bias. *Jordon* v. *State,* 274 Ark. 572, 626 S.W.2d 947 (1982); *Bolden* v. *State,* 262 Ark. 718, 561 S.W.2d 281 (1978); *Farley* v. *Jester,* supra.

The fundamental issue we must consider here is whether the judge, by the act of allowing appellee's attorney to serve as a pallbearer, gave an appearance of impropriety and communicated an impartiality which might "reasonably be questioned." *See* Code of Judicial Conduct Canon 2 (B), Canon 3 (C).

In this State trial judges often know most, if not all, of the attorneys who practice before them. They may have attended the same schools, churches, or belong to the same civic clubs. Most are members of the same bar association. Given these circumstances it probably is not unusual for an attorney to be asked to serve as a pallbearer for the funeral of a member of a judge's family and similarly judges are often honored to serve as pallbearers for the funeral of a member of an attorney's family. These friendships within the bench

and bar do not, of themselves, cause prejudice. The public and the clients are aware of their mutual acquaintances and friendships. In this particular case appellant's attorney was also considered for service as a pallbearer. At the hearing on the motion for new trial the trial judge explained to the appellant:

THE COURT: Well, I would like the record to reflect that when the funeral arrangements were made for my father, I'm the one who made them, and because my mother was simply not able to do so, when Mr. Hale at Caruth inquired about pallbearers, I asked him if it were necessary and he said, "Well, it would look better." I said, "Okay." Then he said, "Do you have any names?" So, I gave him a list of names and I started to give him Mr. Cole's [appellant's attorney] name but I didn't think I could get him from Malvern over here [to Hot Springs]. But, nevertheless, I just simply gave a list of names and they did the calling. I told him if he needed any additional names to give me a call, and that's the way it was. I don't think . . .

Given this background, and the appellant's awareness of the circumstances, we do not find a communication of partiality which might reasonably be questioned.

Appellant next argues that there is insufficient evidence to support the award of $39,500 compensatory damages. He does not contest the finding of fault. Appellee was shot at point blank range with number four shot from a .20 gauge shotgun. The wound was on the right side and lower portion of the abdomen and required an immediate surgical opening. This exploratory laparotomy was for a determination of the damage and treatment. It required two incisions. The first was between six and seven inches in length and extended above and below the navel. The second was into the wound itself, which was six to eight inches, for extensive debridement of damaged tissue. The wound was then irrigated. The scar was closed with metal skin staples. Multiple pellets remain in the abdominal wall and most will remain there for the life of appellee although, over a period of years, some will work their way out. The doctor who

treated appellee testified that appellee's abdomen would remain tender and anything which rubs against the abdominal wall would bother him. Future plastic surgery or skin grafts might be required for scar revision at a cost of $500 to $2,000. The scar tissue will be subject to sunburn. In addition, he testified there would be a permanent partial disability and a permanent scarring. He did not estimate the disability as a percentage. The appellee testified that he could no longer lift heavy objects and that his abdomen was tender and frequently hurt. It was three to four months before he was able to return to his business and he could then only partially perform his duties. His medical expenses amounted to $2,699.01.

We have said that precedents are of scant value in appeals of this kind. *Dyer* v. *Payne,* 246 Ark. 92, 436 S.W.2d 818 (1969). In each case we must study the proof, viewing it most favorably to the appellee, and decide the difficult question of whether the verdict is so great as to shock our consicence or to demonstrate passion or prejudice on the part of the trier of fact. *St. Louis Southwestern Ry. Co.* v. *Pennington,* 261 Ark. 650, 679, 553 S.W.2d 436, 451 (1977). Here only one of the elements of damage is measurable with exact certainty. The past medical expense in the amount of $2,699.01 was proven. That was a valid element of damage. *Williams* v. *Gates,* 275 Ark. 381, 630 S.W.2d 34 (1982). Future medical expenses do not require the same degree of certainty as past medical expenses. *Williams, supra.* The doctor testified that the appellee might need future medical procedures. The appellee testified he still had pain in the area. This was sufficient for the court to consider this element of damages. *Williams, supra.* The plaintiff proved a permanent injury as a result of the intentional shooting. This too constitutes a separate element of damages. *Adkins* v. *Kelley,* 244 Ark. 199, 424 S.W.2d 373 (1968). The appellee was self-employed and did not prove with any degree of certainty a loss of profits, either past or future. However, he did prove a loss of earning capacity and the trial judge could validly consider this element of damage. *Cates* v. *Brown,* 278 Ark. 242, 645 S.W.2d 658 (1983); Woods, *Earnings and Earning Capacity as Elements of Damage in Personal Injury Litigation,* 18 Ark. L. Rev. 304 (1965). The appellee has

suffered disfigurement and has scars. These are elements of damage separate and apart from mere embarrassment and the mental anguish they may cause. *Adkins*, at 206, 424 S.W.2d at 376, *citing Volentine* v. *Wyatt*, 164 Ark. 172, 261 S.W.2d 308 (1924). Finally, the appellee has proven the element of pain, suffering and mental anguish. He is entitled to a recovery for this element in the past as well as that reasonably certain to be experienced in the future. *St. Louis Southwestern Ry. Co.* v. *Pennington, supra.* The award is unquestionably liberal, but when we take into account all of the elements of damage we are unable to say that the amount of the award, $39,500, is so great that it shocks the conscience of this Court.

The final point is the most difficult, that is, whether the award of punitive damages was excessive. For many years, our law has been that punitive damages may be imposed when the defendant acted with malice. *Barlow* v. *Lowder*, 35 Ark. 492 (1880). Clearly malice was present and punitive damages were proper in this case. There is no fixed standard for the measurement of punitive damages. *Ray Dodge, Inc.* v. *Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972). They constitute a penalty and must be sufficient not only to deter similar conduct on the part of the same tortfeasor but they must be sufficient to deter any others who might engage in similar conduct. *Holmes* v. *Hollingsworth*, 234 Ark. 347, 352 S.W.2d 96 (1961). They may amount to somewhat of a windfall to the plaintiff. *Dunaway* v. *Troutt*, 232 Ark. 615, 339 S.W.2d 613 (1960). The amount of actual damages sustained by a plaintiff is but one criterion for the assessment of punitive damages. *Ray Dodge, Inc., supra.* Evidence of the defendant's financial wealth is a proper element to be considered in the computation of punitive damages. *Holmes* at 352, 352 S.W.2d 96 at 99. The amount of punitive damages in this case was not based solely upon the actual damages. An affirmance must be based upon the appellant's wealth. Testimony elicited at trial was that appellant and his wife owned, prior to the tort, as tenants by the entireties 250.3 acres of land having a value of $167,000. Appellant admitted that after the tort action he conveyed his interest to his son for about $10. The appellant admitted that he owned a truck and tractor worth $10,000 to $12,000. He admitted

that after the suit was filed he gave $12,000 derived from the sale of his cattle to his son. He admitted that he gave his son another $5,000 but his wife testified that the gift was $9,000. These admissions amount to $10,000 to $12,000 in his own name and $184,000 to $189,000 in his and his wife's names. Appellant and his wife also owned common stock in the F. W. Woolworth Company and appellant receives $190.12 per month from a balance due, in an unknown amount, on a house sale. Appellant, in addition to the above items, receives $918.00 per month in civil service retirement benefits.

We have examined in detail the appellant's financial worth, and when we consider it in relation to the intentional tort he committed and the need to prevent him or others from repeating such an act, we cannot say that the amount of the award is so great that it shocks the conscience of this Court. Nor are we convinced that the award was motivated by passion or prejudice. In our best judgment the decision of the trial court must be upheld.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. This is in many respects a very tragic case. The majority's opinion today does nothing but magnify the tragedy. My conscience will not allow me to join the majority opinion which, in my opinion, is as unreasonable and unfair as the judgment of the trial court. I realize it is our custom to state only the facts supporting the verdict when we affirm the judgment of a trial court. However, we are not required to ignore the other facts altogether. ·

The parties to this action had been feuding for quite some time prior to this incident. By all reports there had been a series of unpleasantries exchanged. The appellee, a younger man than appellant, lived in Hot Springs and the appellant lived in Bradley County. On the date of the incident the appellee, his wife and a friend were in Bradley County, about 11 o'clock p.m. and very near appellant's

house. The pretext of being in the vicinity of appellant's house that night was that appellee had to relieve himself and thought it would be all right to do so in a gravel pit across the road from appellant's house. Appellant entered the gravel pit to investigate and discovered it was the appellee and wife and friend. It was undisputed that appellant was in possession of a shotgun. Appellee and his witnesses stated the appellant threatened to kill him and ordered the others to stand back. Appellant argues appellee attacked him and the gun fired during the tussle. He also stated he was severely injured by having his own shotgun broken over his head. Appellee was shot at such an angle that no pellets entered the abdominal cavity but instead lodged in tissue in the outer abdominal area. The appellant was knocked unconscious by a blow to the head. The appellee alleged he threw the shotgun to the ground and broke it before beating hell out of appellant. The results of the incident were that appellant spent more time in the hospital and incurred more medical expenses than did the appellee. Appellee, after severely beating appellant, rode in a car to the Hot Springs hospital while appellant had to be transported in an ambulance. The only permanent results of appellee's injuries is a scar on his lower abdomen where the doctors opened him up to see if he had internal injuries, which he did not. Without taking sides, it is all but impossible to glean from the record which man was truly the initial aggressor. In the end, it was definitely appellee who was the victor, not that it makes any difference, but rather to show that it was not a typical case which would justify an inordinate amount of compensatory and punitive damages.

The trial court awarded appellee $39,500 compensatory plus $67,000 punitive damages. The combined judgments exceed appellant's total net worth by far. This judgment would take away appellant's home, all of his lifetime savings and still remain unsatisfied. It is my belief that a judgment in a case like this should be based upon the total circumstances and certainly contributory negligence should have reduced this judgment. Appellee's total medical expenses were less than $3,000, and his pain and suffering did not seem to be extraordinary. The medical expenses and

other circumstances simply do not justify an award of this magnitude.

I must also disagree with the majority opinion that there are no grounds to disqualify a judge who is biased or prejudiced. A judge who is biased or prejudiced should never sit in judgment of a case. Our whole system is predicated upon trials being conducted by judges who are fair and impartial. To hold otherwise would be an act of destruction to the system. I am in agreement with that portion of the opinion which states we would need some objective manifestation of prejudice or bias before we would hold a judge should not preside over a case. I also agree that there was no evidence of prejudice or bias on the part of the trial judge in this case. My disagreement with him is solely on the amount of the judgment.

If affirmance of the punitive damage award depends upon the appellant's wealth, as the majority writes, then this judgment should be reduced by at least fifty percent. His interest in the farm is only contingent and that item represents the bulk of the wealth attributed to him by the trial court and by this court. His actual net worth is less than $25,000. It certainly would be unjust as well as cruel to force appellant's wife, who was not a party to this suit, to sell their farm in order to get money to satisfy this judgment. If financial worth is an element to be considered in the matter of punitive damages there must be a remittitur in this case. It seems to me that the appellee's conduct contributing to this unfortunate affair should be considered. He was obviously looking for trouble or he would not have traveled from his home in Garland County, where the suit was brought, to Bradley County, the home of appellant, to relieve himself in a gravel pit near the residence of a man with whom he had been at odds for sometime past. The severe and near fatal beating he imposed upon appellant is evidence of why he was in Bradley County. I cannot join in rewarding him for picking a fight wherein he was injured.

My conscience is shocked at the amount of the awards. I disagree with the best judgment of the majority. It is my best judgment that a remittitur should be entered.