Hubert Lee MAXWELL *v.* Obie WALSER and David
Walser

88-40                                          751 S.W.2d 351

Supreme Court of Arkansas
Opinion delivered June 20, 1988

*Griffin, Rainwater & Draper, P.A.*, for appellant.

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *Floyd M. Thomas, Jr.*, for appellees.

JACK HOLT, JR., Chief Justice. This appeal is from a judgment by the trial court, sitting as fact finder, by which appellee David Walser was to recover from appellant Hubert L. Maxwell $190.00 for medical expenses, an additional $5,000.00

compensatory damages, and $15,000.00 punitive damages. The award in favor of separate appellee Obie Walser for property damage has not been appealed. Maxwell contends that the awards of compensatory and punitive damages were excessive and not supported by the evidence to an extent that they must surely shock the conscience of this court and clearly demonstrate passion or prejudice on the part of the trial court. We disagree and affirm.

At trial, David Walser, who was the plaintiff below, testified substantially as follows. During the evening hours of September 1, 1982, Walser was driving his father's El Camino Chevrolet truck on a small forest road running across property owned by his father, Obie Walser. At the time, this road was being used by Maxwell and others to haul timber from a tract of land located behind the Walser property. As David Walser was returning in the direction of his father's house, his path was blocked by a vehicle being driven by Maxwell. Another individual, J. Saunders, was a passenger in the Maxwell vehicle.

Walser testified that as he stepped out of the truck, Maxwell and Saunders came around different sides of the truck and became belligerent, cursing and accusing Walser of stealing gas from Maxwell's logging equipment. Both Maxwell and Saunders had been drinking. According to Walser, Saunders was carrying a short section of wood with several inches of twisted chain attached at one end, described as a "horse snubber," which Saunders then gave to Maxwell. Maxwell, after stating that he was going to break Walser's hands and fingers, and kill him, in fact hit Walser in the face with the horse snubber. Walser testified that the blow from Maxwell affected his vision and that he almost fell to the ground.

Walser then ran into the woods and made his way back to his father's house. While in the woods, Walser could hear glass breaking on the truck and what sounded like a shot from a .22. Later, while still in the house, Walser observed Maxwell and Saunders drive up to the house and park for an unspecified length of time. The next morning, the El Camino was found pushed into a ditch—the door of the truck having been scarred by a grader blade. The windshield was broken out, the headlights and taillights were broken, all four tires had been slashed, the seats

had been slashed, the plug wires were cut, the battery had been taken out and destroyed, and a box of tools and a spare tire were missing.

Maxwell conceded at trial that he had been drinking and was "pretty looped," but maintained that he and Saunders found the Walser truck backed up to Maxwell's logging equipment with David Walser apparently in the process of leaving. Walser, according to Maxwell, admitted stealing gas from Maxwell's equipment—a fact Walser denied at trial. Maxwell denied having hit Walser, who he said was hit only once by Saunders, but admitted having a horse snubber in his possession, that he cursed and threatened to break Walser's hands and "beat his fingers off," and that he had damaged the truck. He could not remember having threatened to kill Walser.

Walser testified that he was unable to open his mouth even half way and could not chew for at least two weeks. His face was swollen and bruised. Walser made two trips to the local emergency room and had x-rays taken which failed to reveal any broken bones. His medical expenses were $190.00.

Maxwell's sole contention is that the awards of compensatory and punitive damages were excessive and not supported by substantial evidence. With respect to his position that the compensatory damages award was excessive, Maxwell points out that other than the facts testified to by Walser concerning his injuries and medical expenses, Walser did not receive any prescription drugs, and even failed to keep an appointment with a physician. On the issue of punitive damages, he emphasizes that the award in this case would have little deterrent effect as he had acted out of anger, that Walser's actual damages were minimal, that Walser should be found to have been partly to blame, and that the award failed to take into consideration Maxwell's wealth—or lack thereof—a significant factor in past decisions by this court on the same issue.

The judgment entered of record reflects the trial court's findings that Walser had undergone "physical pain and suffering and mental anguish" for which the compensatory damages at issue were awarded over and above Walser's medical expenses. In his written findings of fact, the trial judge also determined that a preponderance of the evidence demonstrated that Maxwell's

actions were "extreme and outrageous, and so extreme in degree as to go beyond all possible bounds of decency and were atrocious and . . . intolerable in a civilized society."

In *Pursley* v. *Price*, 283 Ark. 33, 670 S.W.2d 448 (1984), this court was faced with factual circumstances in which the appellant, Pursley, had fired several shots at a vehicle driven by another who had failed to dim his headlights. Pursley argued that the amounts awarded by the jury for compensatory and punitive damages had been so great as to demonstrate passion and prejudice on the part of the jury and were such that they should shock the conscience of this court. We disagreed and found the appellant's conduct to have been "completely unacceptable and repugnant to normal response in civilized society." We stated that the amount of damages growing out of mental anguish is ordinarily left to the fact finder, and our decision affirmed an award of $367.28 damages to the vehicle, $20,000.00 for mental anguish damages, and $30,000.00 punitive damages. We further emphasized that punitive damages constitute a penalty and must be sufficient not only to deter similar conduct on the part of the same tortfeasor, but also to deter any others who might engage in similar conduct.

In *Matthews* v. *Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983), we stated, "In each case we must study the proof, viewing it most favorably to the appellee, and decide the difficult question of whether the verdict is so great as to shock our conscience or to demonstrate passion or prejudice on the part of the trier of fact." After due consideration of the proof in the case before us, we cannot say that the awards of compensatory and punitive damages were such that they either shocked the conscience of this court or demonstrated passion or prejudice on the part of the trial judge.

Affirmed.

HICKMAN, J., concurs.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I believe the damages are excessive for the reasons stated in my dissenting opinion in

*Matthews* v. *Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983).